## CAROLINE DOUBLEDAY *vs.* ISAAC KRESS.

60b 181
40ap 58

It is well settled that a debtor is authorized to pay to an agent any sum which is due upon a security which has been entrusted to the agent by the holder, for the purpose of collecting any part of it; as where the agent has been authorized to receive the interest, only, but receives the principal.

Indeed the authorities go to the extent of holding a payment valid, made to an agent who is merely entrusted with the possession of the security, without express authority to receive or collect any part of it. The ostensible authority attributed to a party to whom is entrusted an instrument to secure the payment of money, is to receive payment according to its terms. *Per* TALCOTT, J.

The principal is, as to third persons, not having any notice of a limitation, bound by the ostensible authority of the agent, and cannot avail himself of secret limitations upon the authority and repudiate the agency, where innocent third persons have in good faith acted upon the ostensible authority conferred by the principal.

The plaintiff held a promissory note for $800 and interest, payable to her order, at the office of W., made by the defendant. When it fell due, the plaintiff,

Doubleday *v.* Kress.

without indorsing the note, handed it to M. to present for payment. M. accordingly presented the note, at the place of payment, together with a forged order upon W. purporting to be signed by the plaintiff, requesting W. to pay her money to M. The principal and interest was thereupon paid, by W., and the note delivered up and canceled, and M. absconded with the $800. *Held* that the payment was clearly valid, both upon authority and principle, and discharged the note.

*Held, also,* that the fact that the note was not indorsed by the payee was of no importance.

Although an indorsement is requisite to render a note negotiable, it is not necessary to the validity of a payment. A delivery of the note, to the maker, is all that is required, upon the payment thereof, either to the payee or his agent.

The presentation, by an agent, of a spurious order from the payee, upon the maker of a note, for the amount due upon the note, the maker supposing the order to be genuine, cannot have the effect of invalidating a payment otherwise justified.

APPEAL by the defendant from a judgment rendered against him, upon a verdict, at the circuit.

The action was brought to recover the sum of $874.92, with interest from June 1, 1868, being the amount alleged to be due on a certain note made by the defendant, and delivered to the plaintiff, which she could not produce, for the reason that the defendant had wrongfully possessed himself of and withheld it from the plaintiff.

The allegations in the complaint are denied by the answer, except as expressly admitted. The defendant admits the making and delivery of the note set out; alleges payment by leaving amount due previous to and at the maturity thereof with L. J. Wilkin, at the place where the note was made payable. He further alleges that he so left, or paid, the money with Wilkin at his office to pay the note, and that after the same became due, Wilkin did, at his office, pay the note with the money left for such purpose, said payment being made to one Murray, the agent of the plaintiff, after which payment the plaintiff, through and by her agent, Murray, delivered the note to Wilkin, and Wilkin, before the commencement of the action, delivered it to the defendant. Payment of the note is alleged generally.

The action was tried before Hon. Thomas A. Johnson, and a jury, at the Monroe circuit, October 5th, 1869. At the conclusion of the evidence, "the court directed a verdict for the plaintiff for $884, that being the amount of said note and interest, after deducting $65 and interest thereon;" to which the defendant excepted. Time was given to make a case or exceptions on which to move for a new trial, judgment in meantime stayed. The motion was made and denied, and judgment being entered, the defendant appealed to the general term.

*Charles S. Barker*, for the appellant.

I. The judge erred in directing a verdict for the plaintiff. It should have been for the defendant. 1. Under the evidence, the plaintiff should have been held responsible for the misconduct of her agent, Murray, and not the appellant. (*a.*) The admissions of the plaintiff, with other undisputed facts in the case, show that Murray was the general agent of the plaintiff. He made this loan for her. He was acting as her agent in transacting her business. The plaintiff had no business aside from loaning money, taking notes therefor, and when they were paid, loaning it again. Murray was expressly authorized to take the note (not indorsed by the plaintiff) to the place where it was made payable at its maturity, to collect the interest due thereon, surrender the note and take a new note therefor. (*b.*) He, Murray, did no act that he was not especially authorized to do, except that he took the principal in bank notes or money, instead of a new note, for the note in suit. He was expressly empowered to collect the interest, surrender the note in suit, and take a new note. (*c.*) He was acting in the scope of his employment, when he surrendered the note. It was as much a part of his business to surrender the note as it was to collect the interest. (*d.*) It was not intended by the plaintiff that the note should be indorsed before the interest was paid, and

its delivery to the defendant. 2. Whether the note was indorsed or not, it is confidently submitted, is entirely immaterial under the facts proved. (*a.*) If the defendant could not be protected in paying the principal of the note at its maturity, at the place where it was made payable, in the hands of an agent of the plaintiff, without indorsement, it is equally clear that he would not have been justified in paying the interest on the same ground. (*b.*) The only necessity of an indorsement is for the purpose of transferring the title to the note under the law merchant. (*c.*) The note could be transferred by the plaintiff by mere delivery, without indorsement, so that the transferee could recover thereon. (*Franklin Bank* v. *Raymond*, 3 *Wend.* 69. *Savage* v. *Bevier*, 12 *How. Pr.* 166. *Hastings* v. *McKinley*, 1 *E. D. Smith*, 273.) 3. But Murray did not claim title to the note, or that it ever had been transferred to him. He claimed the note belonged to the plaintiff. If she had indorsed it, the defendant would have been no more protected in paying it. (*a.*) Only when the note is claimed to have been transferred, would the indorsement be of any importance whatever. 4. If the plaintiff had presented the note herself, she would not have indorsed it to protect the defendant in paying. Nor was it necessary to maintain an action thereon by her so to do. 5. The defendant cannot be charged with any neglect in paying the note without indorsement, unless the law would compel him to require more of the agent than he could have demanded of his principal had she transacted the business. The defendant certainly could not have compelled the plaintiff to indorse the note. 6. The payment of the note was made in the usual and ordinary way. If the plaintiff had been present she would not have indorsed the note. (*a.*) It is submitted, on principles of analogy, this question of the right of the defendant to pay the agent on the presentation of the security sent or placed in his possession by the owner thereof, is settled. (*Story on Agency,*

§ 94.) (*b.*) And for the purposes of the argument, let it be admitted the plaintiff sent the note by Murray to Wilkin's office, and the order was a forgery, and his declarations that she had sent him there to collect the note be also stricken out; we will then find an agent, rightfully in the possession of the note, transacting business for the plaintiff. Now, what had the defendant the right to presume? Could he believe anything else but that the note, when presented, would be paid in the usual and ordinary manner? Can there be any difference in principle between this and the case where a party should send his property to a place where it is the ordinary business of the person to whom it is sent, to sell it? In such a case, although the agent may act wrongfully or disobey instructions, yet the principal is bound. (*Story on Agency*, § 94.) (*c.*) To have paid it in any other way, ordinarily, would not have protected the defendant. (*Story on Agency*, § 98.) 7. In this connection it is submitted that the utmost that can be claimed by the plaintiff, under the facts found, is that the note not indorsed, in Murray's hands, was a non-negotiable instrument by the law merchant, like a bond, or the words, "the order of" left out of the note. This being found, we submit that the question of the right of the defendant to pay, to Murray, and his being protected thereby, is settled by authority. (*Megary* v. *Funtis*, 5 *Sandf.* 376, 380. *Williams* v. *Walker*, 2 *Sandf. Ch.* 325. 2 *Greenl. Ev.* § 65. *Hatfield* v. *Reynolds*, 34 *Barb.* 612. *Tappan* v. *Morseman*, 18 *Iowa*, 499.) 8. The rule of law settled in the two cases first above cited is that when the agent has the possession of the security, the payment is good of the principal, although the agent is only authorized to collect the interest. (*a.*) In the first case the facts only differ from this, that the person in possession of the securities was the son instead of the son-in-law of the principal, and an attorney at law instead of agent in fact. In the second, no family relations existed, which, if anything, makes the case

stronger in favor of the defendant. 9. In cases where the principal delivers the possession of the security, whether it be negotiable or non-negotiable, to the agent, he is bound to give notice to his debtors that the agent is not authorized to receive payment thereon, or he will be bound by his agent's acts, if such payment is made when the security becomes due, and in the ordinary way. 10. It is only when the security is found in the hands of a stranger, or person not an agent, that the debtor is bound to ascertain the authority of the person receiving the payment. (*Foster* v. *Beals,* 21 *N. Y.* 247.) In this case the bond and mortgage had been assigned and delivered to the assignee. Payments were thereafter made to the son-in-law of the mortgagor, and his agent; and although the son-in-law was not in the possession of the bond and mortgage, the payments were held good. 11. In other words, it is admitted, that an obligor in a bond or the maker of a non-negotiable note, without indorsement, would not be protected in paying it to a stranger, unless directed so to do by the principal, or he could show the agent had authority to receive payment, or the note was indorsed; neither is the creditor in such case bound to give any notice to the debtor. But if the creditor voluntarily places the security in the hands of his agent, who has been privy to the transaction, with directions to have the security paid in an unusual way, or if he knowingly permits such agent to be possessed of the security under circumstances which ordinarily would lead the debtor to suppose it was for the purpose of being paid, he confers an apparent right on the agent to receive payment in the usual way, and a payment without notice by the debtor to the agent, will be good, although the agent may disobey his private instructions, for the principal places the agent apparently in the position he would occupy himself, and the principal's actions suppliy the place of an indorsement, on the note, or a direction to the debtor to pay the bond to the extent, at least, of making

the payment good. (*Story on Agency*, § 56.  *Booth* v. *Bierce*, 40 *Barb*. 114. . *Barber* v. *Briton*, 26 *Verm*. 112.  *Rawls* v. *Deshler*, 3 *Keyes*, 572.)

II.  From the undisputed facts of the case, the defendant was justified in paying the note, and any loss to be incurred by reason of the misconduct of the plaintiff's agent, Murray, must be borne by her.  I. The note being presented at the place where it was made payable, at the day of its maturity, by the admitted agent of the plaintiff, the defendant had the right to assume it was for the purpose of payment in the ordinary way. (*Supra, point I*, 6, *a, b, c. d*, 7, 8, *a*, 9.  *Story on Agency*, §§ 93, 94, 98.  1 *Parsons on Con.* 39, 40, *5th ed.*)  This case is not an exception to the general rule, "that when one of two innocent persons must suffer by the misconduct of a third person, that party shall suffer who, by his own acts and conduct, has enabled such third person, by giving him credit, to practice a fraud or imposition upon the other party."  And the general rule is, "that every man is bound to take care not to select an agent who will do acts to injure other persons." (*Cartwright* v. *Wilmerding*, 24 *N. Y.* 529.  *Barrett* v. *Spofford*, 2 *Daly*, 455.)  (*a*.) It is confidently submitted, that in principle and in fact, the case of *Booth* v. *Bierce*, (*supra*,) goes further than is necessary to sustain the position contended for by the defendant here.  It was expressly found by the referee in that case, that Babcock was not the general agent of the defendants; "that Babcock had no authority from the defendants to contract at all; that his agency was merely manual, mechanical, and no more."  (*b*.) In the case here, the agent was admitted to be, (1.) The one who makes the original loan for the principal.  (2.) One who transacted the principal's business.  (The principal was not shown to have transacted any other business, aside from loaning money and taking notes therefor, and, when they were paid, reinvesting in the same way.)  (3.) The agent was expressly authorized

to collect part of the amount due on the note—the interest. (4.) He was expressly authorized to surrender the note to the maker, and take a new one. (5.) He negotiated loans and invested money for the principal. (6.) He was entrusted by the principal with the possession of the security upon which the money was due. (7.) He was the son-in-law of the principal. (8.) The principal received from the agent part of the money due on the note, paid by the maker to her agent. (9.) She knew her agent had received all the money due on the note from the maker, but made no objection thereto, whatever, to him for nearly two months. (10.) She knowing the money had been so paid to her agent, and a part of it received from him by her, never paid or offered to pay the same back to the the maker, but retained it. The agent's misrepresentations are about equally balanced in the two cases.

2. The position in which the plaintiff placed Murray constituted him a general agent, in law. (*a.*) She allowed him to assume, and placed him in a position where the defendant could not help believing he was authorized to receive payment of the note. "A general agent is therefore constituted not by the authority which the agent actually receives from his principal, but by that which the latter allows the agent to assume." (*Allen, J.,* in *Bridenbecker* v. *Lowell,* 32 *Barb.* 18.) "When a person is sought to be charged for the act of another, alleged to be his agent, if there is evidence of apparent authority in the agent to bind the principal, the question to be determined is not what power was intended to be given to the agent, but what a third person dealing with him had a right to infer from his own acts, and those of his principal, he possessed." (*Johnson* v. *Jones,* 4 *Barb.* 369. 1 *Parsons on Cont.* 39, 40.) (*b.*) The plaintiff never saw the defendant in relation to the transaction of the business; the parties never met until the trial; Murray acted as her agent in loaning the money, and transacted her business. The

plaintiff gave the possession of the note to her agent, and sent him with it on the very day it matured, to the place where it was made payable, but privately instructed him to receive payment thereof in an unusual way, to wit, part cash—the interest—and the balance by taking a new note, with security; and, as before stated, she never gave the defendant any intimation thereof, or said a word to him in relation to the business at any time, but held out and permitted Murray to do the whole of it. Apparently Murray had the whole charge of the subject matter. (*c.*) The doctrine of the two cases last cited is reaffirmed in *Dunning* v. *Roberts,* (35 *Barb.* 463;) and *Barber* v. *Briton,* (26 *Verm.* 112.) And the attention of the court is respectfully called to the reasoning of the court in those cases, as it is believed to be decisive on the question presented here.

III. The plaintiff is not in a position to maintain this action. She has been guilty of laches, or at least ratified the payment made by the defendant to her agent in money, instead of part in money and balance by new note. 1. She received from Murray more than the interest due on the note. She received $65 and some cents. The interest could not have amounted to more than $63.88; and still retains it, never having offered to return any part of it. 2. She knew that the defendant had paid to Murray, her agent, the money due on the note, instead of giving a new note, two days after it was due. Although she knew of such payment, she never informed the defendant, or made any objection to the manner of its payment, or made any complaint whatever, for nearly two months. 3. If the plaintiff intended to disaffirm her agent's act, it was her duty at once to give notice thereof to the defendant, and return the money received, (at least the amount received over and above the interest;) without this she must be presumed to have assented to and ratified the payment actually made. (*Johnson* v. *Jones,* 4 *Barb.* 369. *Hanks* v. *Drake,* 49 *id.* 186. *Bridenbecker* v. *Lowell,* 32 *id.* 10. 1 *Pars.*

*on Cont.* 51, *and cases cited. Benedict* v. *Smith,* 10 *Paige,* 126, 130.) 4. If she disaffirmed, it must have been *in toto.* (*Story on Agency,* § 250. *Hanks* v. *Drake, supra, opin. of Ingraham, J.,* 202.) (*a.*) We believe she was bound to act promptly, and under the circumstances of the case, the court will hold her to the strict letter of the law; and if under any circumstances she could have disaffirmed the acts of her agent in receiving the payment, she could only do so by giving notice thereof promptly, and placing the parties in *statu quo;* and that she could not receive and retain more of the money due than the interest, in any event, even if she had been allowed to retain the interest, which right we deny. (*Story on Agency,* § 250.) 5. The only evidence in the case that the plaintiff was at all dissatisfied with her agent's action, or that she intended to disaffirm the payment, so far as the defendant is concerned, is that she sent the witness Smith, on the 30th of May, 1868, to see the plaintiff, and that he then demanded payment of the money from the defendant. 6. Such conduct is entirely inconsistent with fair dealing and justice. By this means, if the defendant had any remedy over against Murray, she allowed him to escape. She let the defendant rest in ignorance of the true state of the case, and lose any opportunity he might have had, by vigilance, of pursuing Murray, and enforcing any remedy he might have had against him. 7. In any event, we say that this action of the plaintiff, in connection with the other admitted facts of the agency of Murray, was such that she permitted Murray to assume the apparent position of agent, and the right to receive payment of the note for her in the manner he did; so that she is not allowed to gainsay his right to do so, to the prejudice of the defendant. (*Johnson* v. *Jones,* 4 *Barb.* 373. *Bridenbecker* v. *Lowell,* 32 *id.* 16, 17. *Dunning* v. *Roberts,* 35 *id.* 467. *Lefler* v. *Field,* 50 *id.* 411. *Booth* v. *Bierce,* 40 *id.* 117, 118. *Witbeck* v. *Schuy-*

ler, 44 id. 471. Cairnes v. Bleecker, 12 John. 300. Culver v. Ashley, 19 Pick. 300. Hanks v. Drake, 49 Barb. 201. 202.)

IV. The question whether Murray was authorized to receive payment of the note, should have been left to the jury. 1. The admission that Murray was engaged in transacting the plaintiff's business, his relation to her, he having made the loan in the first instance; the defendant never having seen the plaintiff, she never having given him any notice that she required payment of the note except in the usual way; her subsequent action after being informed that the note had been paid, in money, to Murray; her receiving the interest and even more than that from him, making no dissent for two months, and retaining the money received without returning it or any part thereof; would have justified the jury in rendering a verdict for the defendant; and if they had so found, their verdict would not have been disturbed. The exception to the direction by the court of a verdict for the plaintiff was therefore well taken. 2. The jury had a right to infer from the evidence that Murray was a general agent and authorized to receive payment of the note. "It is not necessary, in order to constitute a general agent, that he should have before done an act the same in specie with that in question. If he has done things of the same general character and effect with the assent of his principal, that is enough." (Com. Bank of Lake Erie v. Norton, 1 Hill, 504.) 3. As before stated, there is no evidence to show that the plaintiff transacted any other business except loaning money and investing it. It is stipulated that Murray acted as her agent in transacting her business.

V. The opinion of the learned justice at special term, mainly rests upon the ground that because the note was not indorsed, the maker had no right to pay it. In our first point we have endeavored to show that this position is untenable. To the reasoning of the judge we respectfully dissent. The plaintiff had a perfect right in connec-

tion with the order presented, and Murray's declarations,
to take into consideration the facts that Murray had been
acting as the plaintiff's agent throughout the whole trans-
tion ; that the loan had been made through him ; that he
was in possession of the note at the time and place where
it was made payable, and the plaintiff had never seen him,
the defendant, or given any directions that she desired the
payment thereof to be made in any other way than in
money, and that Murray was a relation of the plaintiff.

*H. Humphrey,* for the respondent.

I. Payment of money into Wilkin's bank to take up
the note was not payment of the same. (*Chitty on Bills,*
396. *Forster* v. *Clements,* 2 *Camp.* 17. *Rogers* v. *Kelly, Id.*
123.) In the case of *Rogers* v. *Kelly* the plaintiff had
paid into the bank £130, to take up a bill drawn by one
L. C., and indorsed by himself. The banker's clerk by
mistake paid the money to take up another bill, and the
plaintiff then brought his action against the person to
whom the bank had paid the money, the bill being payable
at the bank. It was held by Lord Ellenborough that his
action was against the banker, and not against the receiver
of the money. (*See also Smith* v. *Chester,* 1 *T. R.* 654;
*Chitty on Bills,* 261; *Allen* v. *Dundas,* 3 *T. R.* 127; *Mead*
v. *Young,* 4 *id.* 28; *Cheap* v. *Hanley, cited* 3 *T. R.* 127.)
This last was an action brought by Cheap against Hanley,
who had drawn in London two bills of exchange, 1st and
2d of the same tenor, payable to his, Cheap's order, on
his house in America, which house paid one of them on a
forged order, after which the real payee brought an action
on the other bill, and recovered. In this case the relation
of the parties was the same as in the present action.
1st. The drawer had become payor. 2d. The bank had
paid on a forgery. 3d. The holder occupied the position
of the present plaintiff as real payee. 4th. And sued the
drawer become maker or payor, and recovered. The

plaintiff drew against his own funds, or payment would not have been made. The case of *Johnson v. Windle*, (3 *Bing. N. C.* 225,) is also like the present case. It was the case of a promissory note made by the defendant, stolen from the plaintiff by his clerk, who forged the plaintiff's indorsement and obtained payment, of the defendant's banker, and the banker handed the note to the defendant, the note being payable to the plaintiff's order. The plaintiff recovered in an action of trover—the present action. We allege that the defendant wrongfully possessed himself of the note, and claim the amount.

II. Payment upon a forged order was an unauthorized payment, and was no defense in the action. (*Chitty on Bills*, 391, *and cases cited. Story on Prom. Notes*, § 383.) Where a bill is transmissible only by indorsement, and not indorsed by the proper party, no other person can transfer the interest in the bill, and consequently payment by the drawee, even to a bona fide holder, will not protect the payor. Again, before the acceptor of a bill can pay it, he must be well satisfied that his supposed signature, and that of the first indorser, is genuine, and the latter made by the proper person, and that the person who presents it for payment is entitled to receive it.

III. A power of attorney as broad as the stipulation would be no authority to receive the money on the note. Powers of attorney containing general words of authority, are nevertheless to be construed in reference to the expressed particular object. Hence it is held that a power of attorney given by an executrix to act for her does not authorize the attorney to accept bills to charge her in her own right, though for debts due from her testator. (*Chitty on Bills*, 30.) So in another case, it was decided that a power to demand and receive all dues, use all means to recover them, appoint attorneys and revoke, &c., and to do all other business, &c., did not authorize the indorsement of bills for the grantor of the power. (*Chitty on Bills*, 29.

*Hay* v. *Goldsmidt*, 2 *Smith*, 79. 1 *Taunt.* 347.) A power of attorney to receive all salaries and money, with the principal's authority to compound and discharge, and give releases, &c., does not authorize the attorney to negotiate bills, or indorse them in his own name. (*Murray* v. *E. I. Co.*, 5 B. & Ald. 204.) A power of attorney giving full power to manage specific real estate, with general words extending these powers to all the property of the principal of every description, and in conclusion, authorizing the agent to do all lawful acts concerning the prinpal's business, and affairs of what kind and nature soever, does not authorize the agent to indorse bills of exchange in the name of the principal. A bill indorsed by an agent having power so to do, must be indorsed expressly as agent; thus, A. B., agent for E. F., or E. F. per A. B. (*Chitty on Bills*, 28, 228.) This is so when he has special authority.

IV. The note was not paid upon any supposed agency, nor to one acting as agent; because, 1st, the note was not indorsed, and 2d, it was paid on a written order, purporting to be signed by her in person. Had Wilkin relied on the agency, he would not have required her written order, and paid upon being assured that the order was genuine, nor have ordered it pasted to the note for safety. The order was a forgery, but was conclusive evidence that Wilkin did not regard Murray as having authority to sign her name to an order, because he did not require him to sign as agent—did not require his handwriting, but hers—did not rely upon the genuineness of anything but her signature. In that he was deceived, but not the more for Murray's being or having been her agent. His case was not different from that of any other person paying upon a forged order. Had he not exacted her handwriting, it might have been supposed that he was misled by the agency; that is, provided that he had ever heard that he, Murray, had been agent; but now clearly he was not.

*By the Court*, TALCOTT, J. The plaintiff held a note, made by the defendant and payable to the order of the plaintiff, for $800 with interest, payable on the 1st day of April, 1867, at the office of L. J. Wilkin, in Dundee. When the note fell due the plaintiff gave it to her son-in-law, Murray, at whose house she was stopping, to present for payment. Murray accordingly presented the note to the defendant for payment, at Wilkin's office, on the 1st day of April, 1867, and the defendant then and there paid the note in full, in cash, and the same was delivered up to him and canceled. At the time of such payment the note was not indorsed by the plaintiff. At the time of the presentation of the note, Murray also presented a written order, as follows: "Mr. Wilkin: Please pay my money to Mr. Murray. Caroline Doubleday."

This order was not in fact signed by the plaintiff, and she had no knowledge of it. Murray pretended to the plaintiff that he had received only the interest due on the note, and was to get a new note, with an indorser, for the $800, payable at the expiration of another year, with interest. And he immediately absconded with the $800, and has defrauded the plaintiff of the whole thereof. The plaintiff, by this action, seeks to repudiate the payment, so far as the principal is concerned, and to recover the amount thereof of the defendant, upon the ground that Murray was not authorized by her to receive the payment of the note in cash, but only to receive the interest, and to take a new note for the principal, payable at the expiration of another year. The defendant, however, had no notice, or reason to suspect any such limitation upon the authority of Murray, and had never made any agreement to renew the note in the manner indicated by the instructions of the plaintiff to Murray. The question presented by the case is, whether the payment, under the circumstances, was a valid payment to the plaintiff, and discharged the note.

. The payment was clearly valid, both upon authority and principle. It is well settled that a debtor is authorized to pay to an agent any sum which is due upon a security which has been intrusted to the agent, by the holder, for the purpose of collecting any part of it. As where the agent has been authorized to receive the interest only, but receives the principal. In fact the authorities go to the extent of holding a payment valid, made to an agent who is merely intrusted with the possession of the security, without the express authority to receive or collect any part of it. The ostensible authority attributed to a party to whom is intrusted an instrument to secure the payment of money, is to receive payment according to its terms. And large amounts are constantly paid to parties in possession of such securities, without any other evidence of authority than the bare possession of the security.

The case of *Williams* v. *Walker*, (2 *Sandf. Ch.* 325,) where many of the authorities are collected, was a struggle to have payments held valid, which had been made to the supposed agent after the securities had been withdrawn from his hands. (*See also Hatfield* v. *Reynolds*, 34 *Barb.* 612; *Paley on Agency, part* 11, § 4; *Story on Agency*, § 98.)

The principal is, as to third persons, not having any notice of a limitation, bound by the ostensible authority of the agent, and cannot avail himself of secret limitations upon the authority, and repudiate the agency, where innocent third persons have in good faith acted upon the ostensible authority conferred by the principal.

The fact that the note was not indorsed by the payee is of no importance. Such indorsement would have been requisite to render the note negotiable, but is not necessary to the validity of a payment. A delivery of the note to the maker is all that is required, upon the payment either to the payee or his agent, and all that is usually done. The indorsement is no more necessary than

a receipt. An agent authorized to receive payment undoubtedly might, within the scope of his power, either give a receipt in the name of the principal, or in the case of a note, indorse the name of the principal in such manner that it should appear that the indorsement was made upon a payment, and not for the purpose of putting the note in circulation. The note no more required indorsement to make valid a payment of its full amount in cash, than in case it had been taken up in the manner the plaintiff claims. Murray was authorized to receive the payment. The cases in which the validity of payments to agents have been upheld on the ground of possession, are mostly cases of bonds, where there was no apparent title, by assignment, indorsement or otherwise, in the agent.

In England, mortgage securities have been in some cases excepted from this principle. But even this exception has been repudiated in this country. (*See Williams* v. *Walker*, and *Hatfield* v. *Reynolds, supra.*)

It certainly would not have been prudent for the defendant to pay the note in the manner proposed by the directions of the plaintiff to Murray, without some further evidence of authority, because the presumption from the possession of the security is not of unlimited authority, but only to receive payment according to its terms. (*Story on Agency*, § 98 *and note* 4.)

Here the payment was in precise accordance with the terms of the security, and the payment was authorized by the fact that the agent had the possession of the security with the consent of the owner, for the purpose of receiving payment, although in a manner different from that provided for by the contract. The presentation by Murray of the written order purporting to be signed by plaintiff, could not detract from the effect of the plaintiff's entrusting him with the possession of the note. In fact the possession of the note gave credit to the order. It is not clear but that an agent empowered by parol to collect a

note, might properly write an order for its payment to himself in the name of the principal, as he might sign a receipt or indorse the note if required.

An ostensible authority to receive payment embraces an ostensible authority to do all those things necessary and proper to be done on the occasion. However this may be, it is quite clear that the presentation of the written order, the defendant supposing it to be genuine, could not have the effect of invalidating a payment otherwise justified.

The judgment must be reversed and a new trial granted, costs to abide the event.

The cause having been tried before Justice JOHNSON, he did not sit, on the appeal.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, February 6, 1871. *Mullin,* P. J., and *Talcott,* Justice.]