## L. M. RUMSEY & CO. v. HENRY SCHMITZ, et al.

DEFENSE TO PROMISSORY NOTE; *Payment to Wrongful Possessor, not Good.* Payment of a past-due negotiable note drawn to the order of the payees, and unindorsed, made to a stranger, who is in fact no agent of the owners, and without authority to receive payment, but who has surreptitiously obtained possession of the note, and whose only evidence of authority is the possession of the note and the general business card of the payees, and where there has been no laches on the part of the owners, and nothing in the prior transactions between the parties to induce credence in the authority of such stranger, is no defense to an action by the owners on such note.

*Error from Wabaunsee District Court.*

RUMSEY & Co., merchants at St. Louis, Mo., brought suit against *Henry Schmitz* and *August Meyer*, alleging that defendants " on the 12th of August 1872 made their certain promissory note in writing, of that date, and then delivered the same to plaintiffs, and thereby promised to pay to plaintiffs, or order, the sum of $465.53 in thirty days after date thereof, with ten per cent. per annum from date; that after the giving of the said promissory note, and before it became

due and payable, plaintiffs lost said note; that plaintiffs had never indorsed said note to any person or persons whatever; that afterward, when said promissory note became due and payable, plaintiffs notified the defendants that the same had been so lost by plaintiffs, and then requested defendants to pay said sum of $465.53 named in said promissory note, which defendants refused and neglected to do; that, by means for which plaintiffs cannot account, defendants obtained and now have possession of said note; but plaintiffs aver they never received any compensation for said note from defendants, nor from any other person whatever." Plaintiffs demanded judgment for said principal sum, with interest. Answer, payment. Trial at the September Term 1873, without a jury. The facts fully appear in the opinion. Finding and judgment in favor of defendants, and plaintiffs bring the case here on error.

*R. M. Ruggles*, and *Bertram & Nicholson*, for plaintiffs, urged that this was a note negotiable *in form*, but was never *indorsed* or *negotiated*, and the holder thereof had no right to demand payment of the same; nor ought defendants to have paid it without being legally compelled; and if they did pay it, they paid it at their risk and peril, no matter if the holder represented it to be his own — citing *Johnson v. Windle*, 32 Eng. Com. Law, 95; *Foster v. Clements*, 2 Campbell, 17; *Mead v. Young*, 4 Term, 32; *State Bank v. Fearing*, 16 Pick., 534; Chitty on Bills, 396 and 197, note *e;* 2 Parsons Notes, 256. And it would have made no difference if the note had been indorsed by plaintiffs, for the thief, to whom defendants made payment, never claimed to own the note. The defendants never gave credit to the note, (or indorsement, had there been one,) but wholly relied upon the representations of the thief; and the rule that the holder is *prima facie* the owner of a bill transferable by delivery, does not apply, for the person or thing to whom we give credit we must stand or fall by; and herein defendants were guilty of negligence in not ascertaining whether the thief were *agent* of plaintiffs or not: *Attwood*

*v. Munning,* 7 Barn. & Cres., 278; *Alexander v. MacKenzie,* 6 C. B., 766; *Fitzherbert v. Mather,* 1 Term, 12; Chitty on Bills, 29, 269, 391; 3 Tann., 76; 11 La., 572.

*A. H. Case,* for defendants.    No brief on file.

The opinion of the court was delivered by

BREWER, J.: This was an action upon a note, and the sole defense was payment.    The facts are these:  The defendants doing business at Alma, Kansas, executed their note dated August 12th 1872, due in thirty days, and payable to the order of plaintiffs at the Boatman's Savings Institution in St. Louis.    This note was duly received by the plaintiffs in St. Louis, and placed with their other valuable papers.  These papers were, according to the testimony of J. J. Ostrander, their bookkeeper and treasurer, kept at night locked in their safe, and during the day in a drawer in the witness' desk, and were all the time under the sole charge of said witness. Both safe and desk were in the office which is in the second story of the building occupied by plaintiffs, and separated from the rest of the story by a glass partition.    This office was occupied only by the witness and two bookkeepers.    The witness was absent about an hour at noon of each day, but then locked the drawer where the notes were, and left the key in a drawer of the desk of Moses Rumsey, in another room. When the note became due, it was missed, and after about a week's delay, notice of the loss was sent to the defendants. At about the time the note became due plaintiffs discharged their shipping clerk, who however according to the testimony continued in St. Louis.    In response to the notice of loss, and on October 20th, defendants wrote a letter requesting plaintiffs to forward the note to certain bankers in Wamego, and it would be paid.    This was the only note they had ever given plaintiffs.    The plaintiffs never received anything on account of the note.    On the other hand the defendants showed by August Meyer, one of the partners, that on the 30th of September a party came into their store at Alma,

and handing them the business card of plaintiffs said, "Any-
thing you want in our line?" They gave him an order for
goods, which they never received. After taking the order
he presented the note, and they paid it. They produced the
note in court, and it was unindorsed. They did not know
the agent, they had never dealt with him before. Their prior
purchases had been by mail. He said nothing about the
plaintiffs, but simply presented their card, took the order for
goods, presented the note, and received payment. This was
on the 30th of September. Two days afterward they received
a notice from plaintiffs that they wanted money. Witness
wrote the letter of October 20th, thinking that plaintiffs
might have another note of theirs signed by his partner,
Schmitz, who had signed this. Upon the testimony the court
found for the defendants. And the only question is, whether
the evidence warrants such finding; or rather, whether it is
so clearly against such finding that it is the duty of this court
to reverse the judgment. Two things are evident—first,
that the plaintiffs have never received any pay for the note,
and second, that the defendants have paid the full amount of
it. It is hard for the plaintiffs not to receive the money due
them, and it is equally hard for the defendants to pay a sec-
ond time. It is also clear that there was no intentional wrong
on the part of either. The possession of the note by the
party receiving payment, is the fact upon which the defend-
ants must and do rest their case. The possession of the
plaintiffs' business card, which is intended for general circu-
lation, amounts to little or nothing. And the question really
presented is, whether the mere possession of a negotiable in-
strument, unindorsed, protects the maker in payment, not-
withstanding that the possessor is in fact unauthorized to
receive payment, and has improperly obtained possession. It
is undeniably true, that the possession of the instrument is
often a decisive fact in determining whether the payment to
the agent is a protection to the payor. To that extent are
the authorities cited by the learned counsel for the defense.
And in Story on Agency, § 104, it is said, "And generally

the possession of a negotiable instrument is deemed sufficient *prima facie* evidence of the title of the possessor to secure payment of it." See also *Doubleday v. Kress*, 60 Barb., 181; *Tappan v. Norseman*, 18 Iowa, 499; *Williams v. Walker*, 2 Sand. Ch., 325. In these last two cases the absence of the instrument was considered decisive against the power of the agent, though in the one case the owner had given the defendant to understand that he would place the matter in the hands of the supposed agent, and in the other the supposed agent had in fact negotiated the loan, had possession of the instrument, and had properly received some payments. In this last case quite an examination is made into the English authorities, and a number of cases cited in which a party negotiating a loan has afterward received payment of principal or interest, and the general conclusion appears to have been that the borrower was protected in such payments only when the party receiving had the instrument still in his possession. But in this class of cases it must be noticed that the party receiving payment had been the agent of the owner, and the question was as to the duration and extent of his authority. The fact that the owner permitted him to retain possession of the instrument, was deemed sufficient evidence of a continuation of his authority in the premises, and of his right to receive payment according to the terms of the instrument. The distinction between those cases and the present is obvious. Here the possessor had never been the agent of the owners in this transaction, had never had any connection with it, or dealings with the defendants. He had never had any rightful possession of the note, but had somehow improperly obtained it. The possession of the note was the sole evidence of the fact of agency as well as the extent of authority. The defendants pay to a stranger a debt they owe to the plaintiffs, and the sole protection they present for such payment is the fact that this stranger had possession of the evidence of such indebtedness. There had been nothing in their prior dealings with the plaintiffs to justify such confidence. They had had no

dealings with any runners for them. Their purchases had been by mail. They were wholly unacquainted with the party to whom they made payment. He bore no credentials from the plaintiffs, other than such as can be picked up in any hotel. He presented a note payable to the order of plaintiffs, and unindorsed by them. Yet this unindorsed note they pay to this stranger wrongfully in possession, and having actually no authority to bind the plaintiffs in any way. We cannot think a payment thus made discharges the debt. This proposition may be laid down as correct: Payment of a past-due negotiable note, drawn to the order of the payees and unindorsed, made to a stranger who is in fact no agent of the owners, and without authority to receive payment, but who has surreptitiously obtained possession of the note, and whose only evidence of authority is the possession of the note and the general business card of the payees, and where there has been no laches on the part of the owners, and nothing in the prior transactions between the parties to induce credence in the authority of such stranger, is no defense to an action by the owners on such note.

We are aware of the rule which forbids the court to set aside a finding of fact made by a district court upon conflicting testimony; but here there seems to be no conflicting testimony. The manner of payment as stated by the witnesses for the defendants is taken as strictly true. Indeed, full credence is given to their entire testimony, and it is rather a conclusion of law to be drawn from undisputed facts, than a finding of fact from conflicting testimony.

The judgment will be reversed, and the case remanded for further proceedings in accordance with the views herein expressed.

All the Justices concurring.