FORGAN v. MACKIE.

1. PAYMENT—PRINCIPAL AND AGENT—BURDEN OF PROOF—AUTHORI-
TY TO COLLECT ON UNINDORSED INSTRUMENT.

The burden of proof rests upon the party seeking to es-
tablish payment to show the authority of the person in
possession of an unindorsed instrument payable to order
to collect in behalf of the owner or payee specified therein.[1]

2. EVIDENCE — PRIMA FACIE EVIDENCE INSUFFICIENT TO SUSTAIN
BURDEN OF PROOF WHERE CONTROVERTED.

Where substantial controverting evidence is introduced,
merely *prima facie* evidence is not sufficient to sustain
the burden of proof and warrant a verdict.[2]

3. DISMISSAL AND NONSUIT—WHERE CAUSE DISCONTINUED AS TO
REAL PLAINTIFF CASE ENDED.

Where an action for a balance due the Commercial Ac-
ceptance Trust on a conditional sales agreement was com-
menced by it in its name, and it appears that it was
organized as a voluntary common-law trust in a foreign
State, having powers characteristic of corporations not
applicable to partnerships or individual trustees, and later
the individual trustees were joined as plaintiffs, but no in-
dorsement of the note or assignment of the contract sued
on to them collectively or individually is shown, dis-
continuance of the cause of the Commercial Acceptance
Trust, on motion of its attorney, ended the case; there
being nothing left for the remaining nominal plaintiffs
to litigate in any other capacity.[3]

Error to Wayne; Dunham (Major L.) J., presiding.
Submitted January 21, 1925.   (Docket No. 49.)   De-
cided October 27, 1925.   Rehearing denied December
22, 1925.

Assumpsit by David R. Forgan and others, trustees,
doing business under the name of the Commercial Ac-
ceptance Trust, against O. Mowat Mackie and another

[1]Payment, 30 Cyc. p. 1265; [2]Evidence, 23 C. J. § 1743; [3]Dis-
missal and Nonsuit, 18 C. J. § 59.

for a balance due on a conditional sale agreement. Judgment for plaintiffs on a directed verdict. Defendants bring error. Reversed, and no new trial ordered.

*Barbour & Martin* (*W. Ralph Delaney*, of counsel), for appellants.

*Campbell, Bulkley & Ledyard* (*Harold R. Smith*, of counsel), for appellees.

STEERE, J.   This case was commenced in Wayne county circuit court in April, 1921, under the title "Commercial Acceptance Trust, trustee under the laws of the State of Massachusetts, plaintiff, *v.* O. Mowat Mackie, defendant." The declaration, filed April 13, 1921, was upon the common counts in assumpsit with notice that under the money counts plaintiff would give in evidence a certain contract, a copy of which was attached to the declaration. The purpose of the suit was to recover a balance claimed due under a conditional sale agreement for purchase of a Cadillac sedan automobile entered into between defendant Mackie and the Weisman Motor Sales Company of Detroit, Michigan, on May 27, 1920. The agreement of sale with a note of defendant for the unpaid balance attached were at once assigned by the Motor Sales Company to the Commercial Acceptance Trust. The list cash price of the car was $4,700. The Weisman Motor Sales Company sold it to Mackie under their deferred payment agreement for $4,982, upon which the latter paid in cash $1,992.80, giving his note and executing the conditional sale contract for $2,989.20, which was payable in 8 instalments of $373.65 each, distributed monthly over a period of 8 months, beginning one month from the date of the contract. The Motor Sales Company realized from this sale the

list price of $4,700, selling the contract and note to plaintiff with a discount of $282.

The Commercial Acceptance Trust had its main offices and headquarters in Chicago and dealt in conditional sales agreements of this kind. It maintained a branch office in Detroit under a manager named Franks who solicited business there. Mr. Weisman of the automobile firm testified that Franks solicited their business in that line and during the year 1920 his company had from 50 to 70 transactions of this nature with the Acceptance Trust which furnished its own blanks for the conditional agreements of sale and notes used in their transactions, and fixed the extra charges above the list price, saying of this sale: "Unless we charged $282 (more than the list price) they would never have bought the contract." The $282 was divided into 8 payments which were included in those specified in the contract and note.

The promissory note attached to the contract is enlarged by provisions waiving presentment, protest, and exemption laws. It irrevocably authorizes any attorney to appear for the maker after its maturity in whole or in part in any court of record in the United States, in term time or vacation, and there to waive issue and service of process, confess judgment against the maker in favor of the payee or any subsequent holder for the amount appearing unpaid, together with costs, expenses and attorney fees.

The contract is of the lengthy type customarily used in such cases, specifying that title does not pass by delivery, the note is but evidence of the debt, the seller may repossess the car without demand or notice upon any default in payment by the buyer who waives all right of action growing out of repossession and retaining of the car by the seller, upon default the entire unpaid balance becomes due with interest thereafter at the highest legal rate, the seller may retain all

payments as liquidated damages, with right of action for deficiency, time is made of the essence of the contract, etc.

Thirty-nine pages of the record are devoted to pleadings and other preliminary proceedings. The Commercial Acceptance Trust's simple declaration on the common counts, filed April 13, 1921, was amended on May 16, 1921, by adding a special count covering the contract. On June 22, 1922, a certificate of conducting business under an assumed name was filed with the clerk of Wayne county by the nine persons constituting the members of the Commercial Acceptance Trust pursuant to Act No. 101, Pub. Acts 1907 (2 Comp. Laws 1915, § 6349 *et seq.*), stating in part that they—

"the undersigned, trustees of Commercial Acceptance Trust, under a certain agreement and declaration of trust dated October 22, 1918 (copy of which is on file with the Old Colony Trust Company, of Boston, Massachusetts), * * * now intend to conduct and transact business in the city of Detroit, Michigan, under the name and style of Commercial Acceptance Trust."

On May 11, 1923, an *ex parte* order was obtained joining the Weisman Motor Sales Company "as a party defendant in the above entitled cause," based upon an affidavit stating that "the above entitled case has been brought against O. Mowat Mackie upon a promissory note in which he appears as maker" and the Weisman Motor Sales Company is indorser. On the same date an order was made on motion of plaintiffs' counsel that—

"David B. Forgan, Charles W. Folds, Clive T. Jaffray, John D. Larkin, Stephen B. Strattan, Alexander E. Duncan, William H. Grimes, R. Walter Graham and James C. Fenhagen, trustees, doing business under the firm name and style of Commercial Acceptance Trust, may be and are hereby joined as parties plaintiff in the above entitled cause."

The pleadings and other preliminary proceedings were concluded by defendants' plea of the general issue, filed October 26, 1923, with 11 notices of special defense amplified on December 18, 1923, by the addition of four more special defenses. The case was tried by jury. At commencement of the trial plaintiffs' counsel moved for and was granted an order, against defendants' objection, discontinuing—

"the cause of the Commercial Acceptance Trust, trustee under the laws of the State of Massachusetts, against Weisman Motor Sales Company, a Michigan corporation, and O. Mowat Mackie, and retain(ing) the cause of David R. Forgan and eight others, who are described in the declaration, doing business under the style and firm name of Commercial Acceptance Trust against Weisman Motor Sales Company and O. Mowat Mackie."

The special defenses most appealingly pressed by the defense were payment in full before this action was brought; that discontinuance of the cause of action by the Commercial Acceptance Trust was a discontinuance of the entire case; filing notice by the trustees of said trust that they were doing business under an assumed name as partners was contrary to their articles of association creating the trust; and said trust company is in effect a *quasi*-foreign corporation forbidden to do business in this State without domesticating by applying to the secretary of State, paying the imposed fee and obtaining from him the prescribed certificate of authority.

Mackie made four of the eight partial payments, which were sent to plaintiffs' Chicago office where the papers were kept, but became delinquent as to further payments. In December, 1920, as plaintiffs claimed, the agreement and note were forwarded to the Detroit branch office for collection, but never reached there. In January, 1921, as defendant claimed, a man representing himself as collecting agent of the Commercial

Acceptance Trust went to Mackie's office with those papers and demanded payment of the balance due on them. On Mackie's offering him a check for the amount he insisted on a certified check or the money, as it was after banking hours and he said he must return to Chicago that night. Mackie then obtained the cash and paid him the balance in full, receiving from him in return the original agreement and note. When he was later pressed for payment by plaintiffs' representatives from its Detroit office Mackie insisted he had paid the amount in full to one of its collecting agents who had come to him with the original papers and delivered them to him on receipt of the payment. They were produced in court by the defense and their genuineness admitted. The man was a total stranger to Mackie. He produced no evidence of his authority except the papers which were made payable to the Commercial Acceptance Trust and not indorsed by it, or marked in any way authorizing the payor to pay any one except the owner of the paper.

It is urged for the defense that the possession and production of the note and contract, obtained by paying the amount due upon them to the person in possession of them who demanded payment as collector for the owner, is at least *prima facie* evidence of payment to carry that question to the jury. It is said for plaintiffs that "Mackie's good faith in making payment is not questioned," except that the paper was long past due, Mackie's office was not far from plaintiffs', he made no inquiry by telephone or otherwise to ascertain the identity or authority of the man demanding payment, but "the money was paid, if at all, to a total stranger," to whose order the paper he produced was not payable, and its possession is no evidence of payment to plaintiffs. The trial court so held in directing a verdict for plaintiffs.

While we do not discover that this exact question has been squarely passed upon in this jurisdiction, payment is made an affirmative defense in this State and a marked distinction is universally recognized under the law of payment, as to the duty of the payor, between negotiable instruments payable to bearer and those payable to order.    The burden of proof rests upon the party seeking to establish payment to show the authority of the person in possession of an unindorsed instrument payable to order, to collect in behalf of the owner or payee specified therein.    Conceding that unexplained or uncontroverted evidence of payment to any person in actual possession of the instrument is, standing alone, *prima facie* evidence of payment, under defendant's own explanation of the circumstances and plaintiffs' controverting evidence, it does not shift the burden of proof.

"Where substantial controverting evidence is introduced, merely *prima facie* evidence is not, it has been held, sufficient to sustain the burden of proof and warrant a verdict."    23 C. J. p. 9.

Upon this subject it is said, with sustaining citations, in 2 Daniel on Negotiable Instruments (6th Ed.), 1390:

"Such person in actual possession may perhaps be presumed to be agent of the holder *prima facie*.    But even this is doubtful, and to us seems wrong, for nothing is more common than to indorse negotiable instruments to agents for collection; and if the bill or note be unindorsed in blank, or specially to the party having it in possession, it might be that the owner had withheld his indorsement for the very purpose of preventing collection by a person not entitled to receive the money; and if this were so, the presumption of agency (if, indeed, it be at all admitted) would be rebutted.    The contrary doctrine destroys a great and salutary safeguard to the rights of proprietors of negotiable instruments, and to a large degree breaks down the distinction between those pay-

able to order and those payable to bearer." See, also, *Eaton* v. *Knowles*, 61 Mich. 625.

While not prepared to reverse the ruling of the trial court on that question we are impressed that the court erred in not recognizing defendants' motion for dismissal of the case and directed verdict on other grounds referred to.

A certified copy of the declaration of trust and articles of agreement creating and naming the Commercial Acceptance Trust was introduced in evidence, against plaintiffs' objection. They are dated October 22, 1918. In 1920, that legal entity was engaged in a commercial business with its headquarters and main office in Chicago, Illinois, and a branch office in charge of a manager established and doing business for it in Detroit, Michigan. The business done by it involved here was transacted in its name. Its blanks were used. Assignment of the conditional sale and indorsement of the note by the Auto Sales Company were to the Commercial Acceptance Trust, of Chicago, Illinois. Payments were made to it as such and this action was commenced by it against defendant Mackie in April, 1921, as the "Commercial Acceptance Trust, trustee under the laws of the State of Massachusetts, plaintiffs." Over two years later, on May 11, 1923, the names of 9 persons were added as plaintiffs by an *ex parte* order. No indorsement of the note or assignment of the contract to them collectively or individually by the Commercial Acceptance Trust is shown. What kind of legal entity other or differing from the Commercial Acceptance Trust they became or claimed to be when they filed their certificate of intention to assume its name is not shown. They were all nonresidents of this State and then were in combination as trustees conducting the business of this plaintiff trust, in the trust name conferred on it when organized. Their certificate of doing business

under an assumed name could not transfer to them any property or property rights of the trust or effect its organization and existence as a legal entity. Its articles of trust, "made in the city of Boston, Commonwealth of Massachusetts, on the 22d day of October, 1918," first recite in part:

"That whereas, the subscriber, in accordance with the terms of a certain agreement of even date herewith between the subscriber and the trustees, proposes to transfer, assign and deliver to the trustees, under the designation of 'Commercial Acceptance Trust,' certain assets formerly of the Agricultural Credit Company (Incorporated), a corporation of the Commonwealth of Virginia, and described in said agreement, and the trustees, for the purpose of defining the beneficial interests of the subscriber and its assigns in such property, have agreed to issue to the subscriber negotiable certificates for five thousand (5,000) shares of preferred beneficial interest and twenty thousand (20,000) shares of common beneficial interest in the said Commercial Acceptance Trust, each said preferred share to be expressed of the par value of one hundred dollars ($100.00) and each said common share to be expressed of no par value, all of the said shares to be issued to the subscriber or to its nominees."

This voluntary association organized in Boston, under written articles of agreement and declaration of trust was admittedly what is known as a Massachusetts common-law trust, that State having enacted legislation expressly pertaining to and recognizing such legal entities. Scattered through the lengthy articles of the Commercial Acceptance Trust agreement are various powers and provisions characteristic of corporations not applicable to partnerships or even to an individual trustee. A few of them are, that the trustees in their collective capacity shall be designated "Commercial Acceptance Trust" and under such name transact the business of the trust, execute instruments in writing, etc.; the trustees are given the

legal title to all property owned by it with absolute management and control of the same, and may sue and be sued in the trust name; ownership of shares gives the beneficiary no title interest in the trust property and no right to a division of the same, or to an accounting; personal liability of both trustees and *cestuis que trustent* is expressly negatived; exclusive power is given the trustees to make loans of money belonging to the trust without collateral security, to mortgage or borrow money upon the same as they may determine "and generally to take any action or do anything not in the regular and usual course of business;" authority is given to adopt and use a common seal to be affixed to instruments executed by the trust; any trustee is authorized to acquire, own and dispose of shares in the beneficial interest of the trust the same as though he were not a trustee; such shares are made personal property; the trustees are forbidden to call upon the beneficiaries for payment of assessments; a fiscal year is fixed for the trust, which is to "continue for a term of twenty-one (21) years after the death of the last survivor of the following persons, to wit:" (naming the 9 originally named as trustees).

The chose in action upon which this case is founded was owned by the Commercial Acceptance Trust, which began this case as owner in its own name. When it withdrew and discontinued the case by permission of the court it ended that case. There was nothing of the case left for the remaining nominal plaintiffs to litigate in any other capacity. Defendants' motion to dismiss as to all parties should have been granted.

The judgment is reversed without retrial, with costs to defendants.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.