FIRST NATIONAL BANK IN CRESTON v. GORMAN
(No. 1795; May 2, 1933; 21 Pac. (2d) 549)

For the appellant, there was a brief and oral argument by *J. W. Roushar,* of Torrington, Wyoming.

522

For the respondent and appellant, there was a brief by *Reid & More,* of Torrington, Wyoming.

BLUME, Justice.

This is an action on a promissory note by the First National Bank in Creston, Iowa, against the defendant Rich Gorman. The defendant pleaded payment and settlement of the note. Trial was had to a jury. A motion for a directed verdict for plaintiff for the full amount claimed to be due was overruled and the jury returned a verdict in favor of the plaintiff in the sum of $138.72, but the court, on motion of the plaintiff, rendered judgment in its favor in the sum of $1406.81, notwithstanding the verdict of the jury, the amount of the judgment being the full amount claimed to be due on the note plus the sum of $200 as attorney fees.

The execution of the note is not disputed. It was for the sum of $2281.54, dated March 17, 1928, due on demand, and made payable to the plaintiff, or order, drawing 8% interest per annum payable semi-annually, and providing for attorney's fees in case of suit. Several payments were made on the note during 1928 and 1929, by remittances through the mail, the amount remaining due on September 5, 1929, being the sum of $997.28. The note was secured by a chattel mortgage, duly filed for record, covering some personal property including cattle, horses, and machinery. The evidence shows that the balance due, as above mentioned, has never been paid to the bank nor to anyone by its authority. It did not have the note in its possession, but it was produced at the time of the trial by the defendant, and across its face was marked "Paid in full 3-10-30." This endorsement was not made by anyone authorized by the bank, and it was shown that the note was stolen from the bank, or that its possession was withheld from it without its authority. It was the theory of the cashier of the bank that it might have been sent to the defendant by mistake when writing him a letter asking for payment of the balance due thereon. The defendant claims and testified that there

was due on the note on March 10, 1930, the sum of about $1037; that he paid on that date at Grand Island, Nebraska, the sum of $1000 in full settlement of the note, that amount being accepted by the person receiving payment as a complete discharge thereof; that he paid that amount of money in currency, to a man who represented himself to be one J. V. Richardson, who had formerly been connected with the plaintiff bank; that he had met Richardson once before; that he, defendant, had left Wyoming about three weeks prior to March 10, 1930, with a shipment of some horses which he sent to Tamora, Nebraska, about six miles distant from Grand Island; that he sold the horses there on March 4, 1930, the proceeds thereof in currency and in drafts being about $500; that when he left Wyoming he told no one that he was going to Grand Island, nor did he then know that he would be at that place; that he met the man representing himself to be Richardson about eleven o'clock on March 10, only a few minutes after he himself arrived at that place; that he did not know as to whether or not the man representing himself to be Richardson had the mortgage in his possession; that he did not ask to have it released, nor has it ever been discharged of record. J. V. Richardson, the person above mentioned, formerly connected with the plaintiff bank, was in the court room at the time of the trial. Defendant was unable to state that he was the man who represented himself as Richardson at Grand Island. The latter was a witness in the case, testified that he had permanently severed his connection with the plaintiff bank on February 15, 1929; that he was in Creston, Iowa, on March 10, 1930, and that the endorsement of payment in full on the note was not made by him. In fact, it was conceded on the oral argument herein that J. V. Richardson was not the man to whom the money was paid, but that it was paid to someone un-

lawfully representing himself as having authority to collect. The note, when paid, and when produced at the time of the trial, had not been endorsed by the bank.

Counsel for the appellant claims that defendant's possession of the note raises a presumption that it has been paid; that this presumption has not been overcome; that the plaintiff should have been more careful in not letting the note in question get out of its possession; that that carelessness made it possible for some one to hold himself out as the agent of the defendant, and that it is now estopped to claim that payment was made to one not authorized. Counsel relies partially upon cases which hold that where two innocent parties must suffer, that one should suffer who has made the loss possible. Counsel has, for instance, cited National Safe Deposit, Savings and Trust Co. v. Hibbs, 229 U. S. 391, 33 Sup. Ct. 818, 57 L. Ed. 1241 which is typical of others. In that case a certificate of stock had come into the possession of an employee of a bank as security for a loan. It had been endorsed in blank and was taken and sold by him, and it was held that the sale should be upheld, in view of the fact that the bank's employee was clothed with apparent ownership. Cases of that kind can have no application here, since the note in this case was unindorsed. There is no evidence in the record that the plaintiff was negligent. It is merely shown that there was a possibility that one of the numerous employees of plaintiff's bank could have obtained possession of the note. That is a situation which, of course, may be true in almost any bank. The evidence is also uncontradicted that the note was in fact stolen, or was otherwise wrongfully withheld from the bank's lawful possession and that it was not paid to anyone who was authorized to collect it. The person to whom payment was made was a stranger, who was not known to the defendant, and who was never held out by the bank, at least so

far as defendant knew, as a man with authority to collect. And the only question, accordingly, herein, would seem to be as to whether or not the mere possession of the unindorsed note by the person representing himself as plaintiff's agent gave rise to an estoppel in this case and was sufficient to clothe such person with the apparent authority to collect it. In that connection counsel for the defendant cites a number of cases which speak of the possession of a note raising the presumption of authority to collect, or that a note should not be paid except to one having it in his possession. Most of these cases are not in point. There is some slight authority to sustain the position that mere possession of a note, though not endorsed, entitles the holder to collect the money due thereon. Thus it is said in Paulman v. Claycomb, 75 Ind. 64, 67, that the possession of a promissory note by a reputable person, other than the payee, is *prima facie* evidence of the authority of such person to collect it, whether it is endorsed by the payee in writing or not. In Bacheller v. Priest, (Mass.) 12 Pick. 399, 406, an instrument was specially endorsed to "pay to J. Flewelling, Esq. Treas." The note was presented for payment, however, by one Dunscombe, and payment to him was held good. There was, in that case, no special consideration given to the point involved in this case. Daniel on Negotiable Ins. (6th Ed.) Sec. 1230a, in commenting on the point under consideration, and on the cases just cited, says:

"If the instrument be payable to a particular party or order, and unindorsed by him, it has been held that a payment to any person in actual possession will still be valid, because, although he may have no legal title, he may be the agent of the actual owner. But this doctrine, it seems to us, goes too far. Such person in actual possession may perhaps be presumed to be agent of the holder *prima facie*. But even this is doubtful, and to us seems wrong, for nothing is more common than to indorse negotiable instruments to agents for collection; and if the bill

or note be unindorsed in blank, or specially to the party having it in possession, it might be that the owner had withheld his indorsement for the very purpose of preventing collection by a person not entitled to receive the money; and if this were so, the presumption of agency (if, indeed, it be at all admitted) would be rebutted. The contrary doctrine destroys a great and salutary safeguard to the rights of proprietors of negotiable instruments, and to a large degree breaks down the distinction between those payable to order and those payable to bearer.''

The authorities generally are in full accord with this statement. Dodge v. National Exchange Bank, 30 O. S. 1; Forgan v. Mackie, 232 Mich. 476, 205 N. W. 600; L. M. Rumsey & Co. v. Schmitz, 14 Kans. 542; Lawson, et al. v. Nicholson, 52 N. J. Eq. 821, 31 A. 386, 387; Doubleday v. Kress, 50 N. Y. 410, 10 Am. Rep. 502; Wardrop v. Dunlop, 1 Hun. 325; Anderson v. Wm. R. Moore Dry Goods Company, 152 Miss. 312, 119 So. 914, 915, 8 C. J. 603, 3 R. C. L. 1288; Mechem, Agency, (2nd Ed.) Sec. 935. Porter v. Cushman, 19 Ill. 572, and Barnett v. Ringgold, 80 Ky. 289, deal with cases of special endorsement, and are fully in accord. In Mechem, supra, it is said:

''Authority to receive payment on securities is not necessarily to be implied merely from their possession by the assumed agent. Thus authority to receive payment of a bill or note payable to the order of the principal and not indorsed by him, cannot be presumed from the mere possession by the assumed agent. But where the bill or note is made payable to bearer, or is indorsed in blank, its apparently lawful possession by one whose real relationship is not known, may be sufficient evidence of title if not of agency to sustain a payment to him. Possession, however, when coupled with other facts or acts indicating agency to manage, control or deal with the securities, may be very potent evidence of authority to receive payment.''

In Lawson v. Nicholson, supra, the court said:

"That a person in possession of a bond is thereby shown to have the right to receive the moneys it calls for, is a doctrine that has neither decision nor dictum for its sanction. If such a doctrine prevailed, it would deprive investments in such securities of much of their supposed safety. Such, fortunately, is not the law. Therefore, in the present case, if these securities had been confided to this man Leslie in such form that, without any misconduct on his part, it would have been in his power to manifest his possession of them, such unconditioned fact would have offered not the least ground for the inference of an agency to cancel them on the receipt of the moneys due. The present decree could not stand in the presence of such a showing as this. Much less can it be supported when the important fact is added that the securities were not entrusted to Leslie with the right to exhibit them in the way supposed."

In L. M. Rumsey & Co. v. Schmitz, supra, a case almost identical with the case at bar, except in a few minor and unimportant particulars, the court said:

"And the question really presented is, whether the mere possession of a negotiable instrument, unindorsed, protects the maker in payment, notwithstanding that the possessor is in fact unauthorized to receive payment, and has improperly obtained possession. It is undeniably true, that the possession of the instrument is often a decisive fact in determining whether the payment to the agent is a protection to the payor. * * * Here the possessor had never been the agent of the owners in this transaction, had never had any connection with it, or dealings with the defendants. He had never had any rightful possession of the note, but had somehow improperly obtained it. The possession of the note was the sole evidence of the fact of agency as well as the extent of authority. The defendants pay to a stranger a debt they owe to the plaintiffs, and the sole protection they present for such payment is the fact that this stranger had possession of the evidence of such indebtedness. There had been nothing in their prior dealings with the plaintiffs to justify such confidence. They had had no dealings with any runners

for them. Their purchases had been by mail. They were wholly unacquainted with the party to whom they made payment. He bore no credentials from the plaintiffs, other than such as can be picked up in any hotel. He presented a note payable to the order of plaintiffs, and unindorsed by them. Yet this unindorsed note they pay to this stranger wrongfully in possession, and having actually no authority to bind the plaintiffs in any way. We cannot think a payment thus made discharges the debt. This proposition may be laid down as correct: Payment of a past-due negotiable note, drawn to the order of the payees and unindorsed, made to a stranger who is in fact no agent of the owners, and without authority to receive payment, but who has surreptitiously obtained possession of the note, and whose only evidence of authority is the possession of the note and the general business care of the payees, and where there had been no laches on the part of the owners, and nothing in the prior transactions between the parties to induce credence in the authority of such stranger, is no defense to an action by the owners on such note."

In the case of Anderson v. Dry Goods Company, supra, a case decided in 1929, payment was made of an unendorsed note to one without authority to collect. Instead of contending in that case that the person who received payment was the apparent agent of the owner, counsel claimed that he was the holder of the note within the meaning of the Negotiable Instruments Law (Sec. 74-619, Wyo. Rev. St. 1931), reading that "payment is made in due course when it is made at or after the maturity of the instrument to the holder thereof in good faith and without notice that his title is defective." The court, however, held that the term "holder" means the person who is legally in possession of the instrument, either by endorsement or delivery or both, and who is entitled to receive payment from the drawer or acceptor or maker of the note, and does not include a person in actual possession who has no right to such possession. This holding is in harmony with what we said in Capitol Hill State Bank v. Bank, 24

Wyo. 423, 449, 160 Pac. 1171, 11 A. L. R. 937, wherein we held that a person in possession of a note which is not endorsed or assigned, and which is not payable to bearer, cannot without further proof be considered the holder of the note. Thus we have arrived at the same conclusion by two different methods of reasoning. When the note was presented for payment by a stranger, without a legal transfer, the presumption was that it was lost or purloined or otherwise improperly got into circulation. Porter v. Cushman, supra. The defendant took the risk of making payment to him, without being able to show that he had authority to collect. Moreover, he had other ample means by which he could have fully protected himself, namely, by obtaining a draft or check payable to the plaintiff bank, a method similar to that adopted by one of the parties in Dodge v. Bank, supra. But for some unexplainable reason, he chose to pay the note in currency. We have no choice but to affirm the judgment.

It appears herein that the defendant, appellant herein, died on March 30th, 1933. The cause was submitted to the court on March 17th, 1933. It was held in Wallace v. Wallace, 150 Ky. 33, 150 S. W. 13, that in such case it is unnecessary to enter an order *nunc pro tunc,* since the judgment, in any event, relates back to the date of the submission of the cause. The general practice, however, appears to be to enter the judgment as of the date of the submission of the cause or some date prior to the party's death. Note, 3 A. L. R. 1418. Without deciding whether that is necessary, we shall herein adopt that practice, and affirm the judgment of the trial court as of March 17th, 1933.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.