LINGLE v. SNYDER.

(Circuit Court of Appeals, Eighth Circuit. March 27, 1908.)

No. 2,594.

1. CONTRACTS—LEGALITY.

A contract to violate the law, or to do that which is immoral or contravenes the settled public policy of the state or nation, is void, and no right of action can be predicated thereon.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 468–476.]

2. SAME—PUBLIC LANDS—INCLOSURE.

Act Cong. Feb. 25, 1885, c. 149, 23 Stat. 321 (U. S. Comp. St. 1901, p. 1524), prohibits inclosure of lands of the United States by persons having no claim or color of title in good faith, and no asserted right in view of entry under the general land laws, and makes violation of the act a misdemeanor. A contract for the leasing of grazing lands consisted of two writings embracing lands owned by plaintiff in fee, and lands leased by

him from the states. It recited that its purpose was to give defend'ant all rights and privileges that might be derived from the use of the government lands adjoining those mentioned and which were theretofore used by plaintiff, and also embraced all plaintiff's fencing in two counties, and imposed on defendant the duty to maintain and keep it in repair. In one of the repair clauses, the fencing on a tract described as the S. range was mentioned, with a provision that if the government wished it taken down, plaintiff was to attend to it, it appearing that the lands included in such range, which were a part of the leased premises, comprised a large ·tract of public lands unlawfully inclosed by plaintiff, which fence the contract required plaintiff to maintain. *Held*, that such instruments having been executed at the same time and as a part of the same transaction, constituted a single contract, contemplating the violation of the laws of the United States, and, being indivisible, no action for damages could be maintained for breach of the contract with reference to the lands of which plaintiff was in lawful possession at the time of the lease.

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District ·of Wyoming.

John D. Clark (Gibson Clark, on the brief), for plaintiff in error. John W. Lacey, for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. Thomas B. Snyder sued Hiram D. Lingle for damages for breach of a written contract of lease of lands and fencing in Sioux county, Neb., and Laramie county, Wyo. In defense Lingle set up another writing made by them, and averred it was a part of the transaction, and that the contract in its entirety contemplated a continuance of an enclosure of the public domain in violation of the laws of the United States, and, being a single and indivisible contract, it was wholly void; also, that after performing for a time his covenants as lessee, he abandoned the premises upon being advised of the unlawful character of the agreement. The trial court was of opinion there were two separate contracts, one lawful, ·the other unlawful, and therefore allowed judgment on the former. The defendant Lingle brought this writ of error.

The connection between the two written instruments was conclusively established by their recitals and the evidence. They were executed at the same time, by the same parties, and to evidence a single ·transaction in its completeness. The unity of a contract is not broken because all its stipulations are not found in the same repository. The rental defendant agreed to pay was a sum in gross, and it was for the use and enjoyment for a fixed period of all the properties mentioned in both writings. The rental was not apportioned and no ·method of apportionment was suggested by the language employed. The various stipulations describing what plaintiff leased and what ·defendant was to do and pay in return were mutual and dependent covenants of a single contract. They did not relate to independent, disconnected transactions, and there is no rule by which a court can distribute them and allot to each item of leased property a portion of ·the single rental sum. For aught that appears the right to use the large body of public land said to have been unlawfully fenced by ·plaintiff may have been the principal, if not the sole, inducement to

defendant to enter into the contract relation. Without it the remainder might not have served his purpose, and he might not have desired to lease it at all.

The contract of lease as shown by the two writings embraced 1,306 acres of land owned by plaintiff in fee simple, and 4,480 acres of school land leased by him from the states, and it recited that its purpose was also to give defendant all the rights and privileges that might be derived from the use of the government lands adjoining those above mentioned and which were theretofore used by the plaintiff. It also embraced all plaintiff's fencing in the two counties, and imposed on defendant the duty to maintain and keep it in repair. In one of the repair clauses the fencing on what was known as the Snyder range was specifically mentioned with a provision that if the government ordered it taken down the plaintiff was to attend to it. The writings bear evidence of careful preparation and in view of the presumption of right doing it is doubtful that they affirmatively show a purpose to violate the laws of the United States. Consequently defendant sought at the trial to prove by extrinsic evidence that the lands in the Snyder range, which were a part of the leased premises and comprised 11,200 acres, were public lands of the United States unlawfully inclosed by plaintiff, and that they were within unlawful fences also leased to defendant, and which the contract required him to maintain and keep in repair.

The trial court denied the attempts of defendant to identify the lands and fences mentioned in the contract with those actually in existence and to prove what he claimed to be the real character of the transaction. We need not follow the criticisms by plaintiff's counsel of the various questions and offers of proof that were excluded. It is sufficient to say we think some of them were properly framed and competent, and the reason of the trial court for sustaining plaintiff's objections was clearly indicated by its observation that there were two distinguishable contracts, one lawful, the other unlawful—a view in which we are unable to concur. Of course it is always competent as between the parties to show by parol evidence that a written contract, fair on its face, is in truth contrary to law, morals, or public policy.

By the act of February 25, 1885, c. 149, 23 Stat. 321 (U. S. Comp. St. 1901, p. 1524), Congress declared to be unlawful the inclosure of lands of the United States by persons having no claim or color of title in good faith or no asserted right in view of entry under the general land laws. The erection and maintenance of such inclosures was "forbidden and prohibited." It was also provided that any person violating any of the provisions of the act, whether as owner, part owner or agent, or who should aid, abet, counsel, advise or assist in any violation should be deemed guilty of a misdemeanor, be fined in a sum not exceeding $1,000 and be imprisoned not exceeding one year for each offense. If what defendant pleaded and sought to prove was true, the plaintiff, when the contract was made, was maintaining an unlawful inclosure of a large area of the public domain, and was subject to fine and imprisonment, and one of the objects of the contract sought to be enforced was that defendant should continue the offense

for their mutual profit and advantage The contract contemplated, and its observance required, a violation of the law. It could not have been carried out, plaintiff's compensation could not have been earned, and defendant's use and enjoyment could not have been secured to the extent contracted for without subjecting both parties to the penalties of the law. The agreement of plaintiff to remove the fences on the Snyder range when ordered to do so by the government does not help matters. The operation of the act of Congress was not suspended nor the commission of the offense postponed until demand by the officers intrusted with the enforcement of the laws. The act at its passage commanded obedience and contained all requisite admonitions.

It is a familiar rule that a contract to violate the law or to do that which is immoral or contravenes the settled public policy of state or nation is void, and it has been applied to contracts having for their object the unlawful inclosure of public lands and the obtaining of revenue from a use so secured and protected. Dupas v. Wassel, 1 Dill. 213, 8 Fed Cas. 107, Case No. 4,182; Tandy v. Commission Co., 113 Mo. App. 409, 87 S. W. 614; Garst v. Love, 7 Okl. 666, 55 Pac. 19. Plaintiff's action for damages for a breach of the contract necessarily involves an assertion of its validity and binding force, and it is as much an action on the contract as if he had sued defendant for unpaid rental. Damages or compensation for the breach of an illegal contract will not be allowed. Sir George Jessel in Sykes v. Beadon, L. R. 11 Ch. Div. 170, 197. True, the contract before us embraced lands lawfully owned and fences lawfully maintained by plaintiff, all of which he had the right to lease, but who can say that regarding them alone the parties would ever have contracted at all, or if so upon what terms and conditions? If legal and illegal stipulations in a contract are independent and divisible the latter may be excluded and the former enforced, but when the parties have woven them together into a single agreement a court of justice will not unravel the good from the bad. This is doctrine that has come down from an early day. Featherston v. Hutchinson, Cro. Eliz. 199; Baker v. Hedgecock, 59 L. T. 361, 36 W. R. 840; Pickering v. Railway, L. R. 3 C. P. 235; McNamara v. Gargett, 68 Mich. 454, 462, 36 N. W. 218, 13 Am. St. Rep. 355; Holt v. O'Brien, 15 Gray (Mass.) 311; Deering v. Chapman, 22 Me. 488, 39 Am. Dec. 592; Widoe v. Webb, 20 Ohio St. 431, 5 Am. Rep. 664; Bishop v. Palmer, 146 Mass. 469, 16 N. E. 299, 4 Am. St. Rep. 339; Santa Clara, etc., Co. v. Hayes, 76 Cal. 387, 18 Pac. 391, 9 Am. St. Rep. 211. In Hazelton v. Sheckells, 202 U. S. 71, 26 Sup. Ct. 567, 50 L. Ed. 939, it was said of the contract there involved:

"Every part of the consideration goes equally to the whole promise and therefore, if any part of it is contrary to public policy, the whole promise fails."

The judgment is reversed, and the cause remanded for a new trial.

SANBORN, Circuit Judge (dissenting). I am unable to concur in the reversal of the judgment in this case. In my opinion no com-

petent evidence of the invalidity of the contract evidenced by the two writings was offered, because there was no moral wrong in maintaining the fences, their maintenance was not illegal until the statute forbade it, the statute which denounced the fencing of the government land prescribed other penalties and did not prescribe the invalidity of contracts regarding that fencing as a punishment for its violation, and the courts ought not, in such a case, to affix that additional penalty. Harris v. Runnels, 12 How. 84, 85, 86, 13 L. Ed. 901; Fritts v. Palmer, 132 U. S. 282, 289, 293, 10 Sup. Ct. 93, 33 L. Ed. 317; National Bank v. Matthews, 98 U. S. 621, 629, 25 L. Ed. 188; Logan County Bank v. Townsend, 139 U. S. 67, 76, 11 Sup. Ct. 496, 35 L. Ed. 107; Dunlop, Trustee, v. Mercer (C. C. A.) 156 Fed. 545, 555, and cases there cited, and because in my opinion the legal part may be separated, indeed is separated from the illegal part of the agreement, for Lingle agreed to pay the same rental whether the fences around the government land were ordered and taken down or not, so that in legal effect his contract was to pay the rental specified and for which this suit is brought, for the use of the other land and to maintain the fences around the government land until they were ordered down and then to remove them for the use of that land until the fences were removed.