**Elmer ·J. PARSLEY, Appellant**
**(Plaintiff below),**

**v.**

·**WYOMING AUTOMOTIVE COMPANY, and**
**Ernest Wilkerson, Appellees**
**(Defendants below).**

**No. 3247.**

Supreme Court of Wyoming.

Sept. 15, 1964.

John J. Rooney, of Hickey, Rooney & Walton, Cheyenne, for appellant.

Robert R. Rose, Jr., Casper, for appellees.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Elmer J. Parsley, plaintiff, sued his employer, Wyoming Automotive Company, and its principal-executive officer, Ernest Wilkerson, for breach of an alleged contract to pay plaintiff $150 per month for five years as retirement pay. Claims are also involved concerning shares of stock in the company, which were held by plaintiff, and concerning rights lost by plaintiff in group-insurance policies.

Following a trial without jury, judgment was awarded in favor of the defendants, and plaintiff has appealed. We are notified of his death on July 8, 1964, subsequent to oral argument and the submission of this case on appeal.

For the most part, facts in the case are not in dispute. They reveal that Parsley, who was born January 10, 1897, went to work for Wyoming Automotive in May, 1933, at the age of 36. He left this employment December 31, 1960, at age 63, with more than 27 years of service. At various times during his years of service, presidents of the company made statements indicating a desire on the part of the company to provide its employees with a retirement plan and promising such a plan would be worked out and put into effect.

On September 15, 1955, a profit-sharing trust was set up for employees under the age of 55 as of March 1, 1955. It was stated in the announcement thereof that special provisions would be made for employees over 55 years of age, which included plaintiff. Then on June 30, 1960, a company bulletin reported a "uniform policy" affecting nonprofit-sharing participants relative to retirement from the company's service. According to this bulletin:

1. An employee could be retired at the company's option after reaching the age of 60, in which case he would be paid one-half of his monthly salary until he reached age 65, if he had 35 years of service. If he had less than 35 years of service, his monthly retirement pay would be diminished in ratio.

2. An employee could retire at his option or be retired at the company's option after reaching the age of 65 and after service of 25 years, at the rate of $150 per month, from which would be deducted the amount earned elsewhere, up to $1,200 per year. Payments would be reduced in ratio if the employee had less than 25 years of service.

The bulletin stated that while the company would do all possible to maintain these payments, it could not *guarantee* they would be permanently paid. The communication was directed to all general managers and store managers, and named personnel. In the body of the instrument it was recited that the policy affects the following personnel: Blackman, Bottrell, Brandenburg, Mervine, *Parsley*, Russell, Shields, Stewart, Welter, and Woolston.

Upon inquiry as to whether he wished to retire, Parsley advised the company he did not wish to do so. Thereupon Wilkerson wrote him a personal memorandum on December 5, 1960 in which he offered Parsley a transfer from Cheyenne to a salesman's job in Denver, with the following alternative:

"If you do not want to do this, then the company will pay you retirement pay at the rate of $150 per month for a period of five years. * * *"

In the same paragraph of his memorandum, Wilkerson advised that the company had concluded its June 30, 1960 plan was too liberal and the directors had accordingly adopted a modification which would terminate the $150 per month employee benefits at the end of five years. He continued by saying inasmuch as anything the company does in the way of retirement is something in the nature of a gift because there was never any agreement for it during past years, we do not feel we have a contract with anyone on this matter, except in the case of Shields, who was specifically told, and for a particular reason, that he could have early retirement.

We find nothing in the memorandum which says or implies that the offer to Parsley of $150 per month for retirement was qualified or subject to the conditions of any previous retirement plan. On the other hand, the writer, as we read his memorandum, explained that the June 30, 1960 plan was not being followed because it was considered too liberal and did not constitute a binding agreement for pension benefits.

The position of the company was made clear in its memorandum to Parsley that it did not consider itself under contract to its employees by reason of the bulletin or previous promises. However, it acknowledged that a contract had been concluded with Shields, and it was offering in words which could scarcely have been more clear to conclude a contract with Parsley, when Wilkerson said, "If you do not want to do

this, then the company will pay you retirement pay * * *."

Notice of the modification which Wilkerson referred to in his memorandum to Parsley was sent to all general managers and store managers and to the personnel not covered by the company's profit-sharing trust (including Parsley), in a further bulletin dated December 8, 1960. Parsley was properly included in the distribution thereof because he was still an active employee and had not yet elected whether to transfer to Denver or accept the retirement which had been offered to him.

In this bulletin the company again made it clear in express words that it was denying any *commitment* on the part of the company, under the former bulletin or under the modification, to pay pensions in any amount. It stated what the company was going to "try to do" in these words:

"The only modification in this program is that, as to employees retired at age 65, or later, the payments under the program, instead of continuing for an indefinite period, will continue for a period of five years."

Although the company was now saying to Parsley that its bulletins should not be construed as a commitment to pay pensions in any amount, the memorandum of December 5, 1960 expressed a commitment without qualification or reservation to "pay you retirement pay," in the event Parsley did not want to transfer to Denver.

Actually, at the time of his retirement, Parsley did not qualify for retirement under the June 30 bulletin nor under the modification thereof. He was 60 years of age but was not being retired at the option of the company. Therefore, he could not come under the first part of the June 30 bulletin. Also, he was not yet 65 and could not for this reason come under the second part of the bulletin. As far as the modification is concerned, it referred only to employees retired at age 65, "or later." Parsley was only 63.

Appellees argue that in the event Wilkerson's memorandum of December 5 is found to contain an express offer for the payment of retirement pay, then the provision for deduction of any amounts earned elsewhere up to $1,200 per year should be read into the offer by implication. In our minds, this calls for a strained and unnatural interpretation of the offer made in the December 5 memorandum. Since we cannot look to the bulletin for implied benefits in favor of the employee, we think we should not under the circumstances of this case look to it for implied limitations.

We are assisted in this conclusion by additional evidence of the parties' intentions. Parsley accepted the offer of the company for retirement in a letter dated January 13, 1961. Speaking for himself and family in this letter, he said "we have made the decision to stay here [Cheyenne, Wyoming], and accept the pension of $150.00 per month for five years as stated in your letter of December 5, 1960."

There was nothing in the acceptance to indicate that the acceptor expected deductions for amounts earned elsewhere. In fact the opposite is strongly indicated. The company did not correct Parsley's obvious understanding that the pension was to be $150 per month for five years. On the contrary, Wilkerson further verified the same understanding by a letter to Parsley on January 16, 1961, in which he said, "As indicated in my letter to you of December 5, we will pay you a monthly pension of $150.00 per month for a period of five years, the first payment to be made February 15, 1961, and a like payment on the 15th of each month thereafter." Here again, there was absent any indication the company intended to deduct for amounts earned elsewhere.

As a matter of fact, the company actually commenced regular monthly retirement payments to Parsley and continued them until he reached 65 years of age, without attempting to deduct for earnings elsewhere or without making any inquiry as to such earnings. Then, on February 16, 1962, the company's controller wrote Parsley stating that since he had now passed his 65th birthday, his pension would be subject to deductions up to $100 per month for amounts earned elsewhere.

This precipitated an insistence from Parsley that his pension was not subject to such deductions, and he refused to report what his earnings elsewhere amounted to. The company thereupon discontinued his retirement pay.

We have already indicated the opinion that nothing was expressed or implied in Wilkerson's offer of December 5, 1960 nor in Parsley's acceptance of January 13, 1961 to indicate the pension was subject to deductions for earnings elsewhere. Consequently, the only consideration left, as far as a contract for retirement pay is concerned, is whether or not there was sufficient consideration to make the offer and acceptance a valid contract.

There was testimony to the effect that over a period of years presidents of the company had stated employees would be taken care of and be provided with a retirement plan if they would stay with the company. When the profit-sharing trust was created September 15, 1955, the company stated in its trust circular that it was excluding all employees who were over 55 on March 1, 1955 and was making special provisions for them.

At a stockholders' meeting on March 1, 1958, according to the minutes thereof, the president stated he was exploring for a method to be used for a pension program for employees over 55. At another stockholders' meeting on March 7, 1959, with Parsley in attendance, the president stated the directors would consider each case when an employee in the over-55 class retired, taking into consideration years of service, financial need and other factors. Again on June 23, 1960, the problem of retirement pay for employees past 55 years of age was reviewed at a stockholders' meeting, and it was decided an equitable arrangement would be worked out based upon length of service. Then finally the

June 30, 1960 bulletin was sent out to plaintiff-Parsley and other company personnel announcing a uniform company retirement policy for employees not covered by the company's profit-sharing trust.

Plaintiff testified that he remained in the employ of defendant-company over the years, although he had many opportunities for other employment, because of the promises from the company that it would provide for the employees when they got older, if they would stay with the company.

It has been quite generally held, and we adopt the holding as a rule to go by, that where an employer has a pension plan and the employees know of it, continued employment constitutes consideration for the promise to pay the pension. Rubin v. Adams, Tex.Civ.App., 368 S.W.2d 42, 45; Hunter v. Sparling, 87 Cal.App.2d 711, 197 P.2d 807, 814; Annotation 42 A.L.R.2d 461, 467 and cases cited therein. See also 56 C.J.S. Master and Servant § 169, p. 828.

If this rule means anything at all, when applied to the case before us, it means that after June 30, 1960, consideration started flowing to the employer from those employees named in and affected by the bulletin of that date, as long as they continued in their employment. See Cantor v. Berkshire Life Ins. Co., 171 Ohio St. 405, 171 N.E.2d 518, 522.

A retirement pension, it has been said, is in the nature of pay withheld to induce continued faithful service. It amounts to compensation for services previously rendered. David v. Veitscher Magnesitwerke Actien Gesellschaft, 348 Pa. 335, 35 A.2d 346, 349; Ball v. Victor Adding Machine Company, 5 Cir., 236 F.2d 170, 174.

There can be no doubt that the June 30 bulletin clearly announced and set forth a specific and definite retirement plan for employees not covered in the profit-sharing plan, and Parsley had knowledge of it. The company unequivocally promised in the bulletin that it would do all possible to maintain the payments provided for. Although it was stated there could be no guarantee the payments would be permanently paid, we construe the meaning to be that payments would be made as long as the company was solvent and able to make them. Parsley testified he so understood the bulletin. There was no evidence to show inability on the part of the company to make payments.

Thus, it becomes apparent that on and after June 30, 1960 Parsley began acquiring rights under the pension plan then announced, or at least the claim of rights.

For the first time, when Wilkerson sent his memorandum to Parsley on December 5, 1960, the company took the position it had no contract with or obligation to employees named in the prior bulletin. It repeated the same position in its modification on December 8. Inasmuch as employees had not contributed to a pension fund, it is possible that modifications and changes could be made in the plan by the company. However, as we have indicated, Parsley had already acquired, on account of his continued employment after June 30, some rights or claims under the pension plan.

Therefore, when Wilkerson offered a different retirement plan for Parsley individually, on December 5, 1960, and when Parsley accepted it on January 13, 1961, the transaction amounted to a compromise or readjustment of the retirement plan by mutual agreement. In that compromise settlement, Parsley gave up the rights and claims previously acquired by him under the June 30 plan, and that was a valuable consideration.

Under the circumstances of this case, we see no reason not to apply the general rule on compromise and settlement, i. e., that the settlement of a bona fide dispute or a doubtful or unliquidated claim, if made fairly and in good faith, is a sufficient consideration for a compromise based thereon. 15 C.J.S. Compromise and Settlement § 11, p. 728.

Parsley has made it abundantly clear that he was making an honest and good-faith claim to rights under the June 30 plan, and even Wilkerson showed that he thought the

company had granted concrete and definite rights by its June 30 bulletin. In his memorandum of December 5 to Parsley, he complained because Parsley had not acknowledged the communication or said "thank you." Also, in the modification bulletin of December 8, he complained of the lack of appreciation on the part of all affected employees, calling the program, in effect, a gift of an annuity worth about $10,000.

It has been held that where an employee gives years of faithful service in reliance upon a pension plan, the service constitutes a valid consideration for the voluntary pension plan of the employer and establishes a contract. See Dolan v. Heller Bros. Co., 30 N.J.Super. 440, 104 A.2d 860, 862 and cases cited therein; and also Rubin v. Adams, Tex.Civ.App., 368 S.W.2d 42, 45.

Other cases seem to indicate that until the time arrives when an employee may retire, his retirement pay is an inchoate right; but when conditions are met and retirement actually commences, the retirement pay then becomes a vested right of which the pensioner cannot be deprived. David v. Veitscher Magnesitwerke Actien Gesellschaft, supra, at 35 A.2d 351; Cantor v. Berkshire Life Ins. Co., supra, at 171 N.E.2d 522; Schofield v. Zion's Co-op. Mercantile Institution, 85 Utah 281, 39 P.2d 342, 344-347, 96 A.L.R. 1083.

In the Cantor case, the court said the right became vested after retirement and the employer could not divest the employee of his rights, regardless of whether the retirement plan is contributory or noncontributory and even though the employer has reserved the right to amend or terminate the plan. The Schofield opinion recognized that until the acceptor had completed the act called for in the offer, such offer may usually be withdrawn, limited, or modified. Also, the court in the Dolan case, at 104 A.2d 861, states that a purely voluntary pension plan is a mere gratuity and not an enforceable contract, in which the employee has no vested right *until he begins to receive benefits thereunder.*

On the basis of these authorities, we would say even if Wyoming Automotive could modify, limit, or withdraw its offer of retirement pay at any time before an employee became eligible for retirement, it could not in the case of Parsley do so after he was actually retired and commenced receiving retirement payments, unless insolvency or other inability rendered the company unable to make such payments.

We fail to find anything in the offer and acceptance which initiated Parsley's retirement to indicate there was an intention for *retirement pay* to be paid to his family or to his estate. See Ulmann v. Sunset-McKee Company, 9 Cir., 221 F.2d 128, 132-133. Therefore, we think payments of $150 per month should have been made during the lifetime of Parsley, but not exceeding a period of five years.

One of plaintiff's causes of action had to do with group insurance which covered the active and retired employees of Wyoming Automotive. Defendants caused this insurance to be canceled insofar as it pertained to plaintiff. Count V of the complaint alleges a breach of contract and a violation of duty by the defendants in preventing plaintiff from keeping the insurance coverage in force.

According to the decision of the district court, any consideration of this cause of action was unnecessary. Also, the court found with respect to Count V that a cause of action had not accrued. Our disposition of the appeal changes the situation as far as insurance is concerned, and it is now necessary for a determination to be made with respect to the cause of action relating to insurance. The case needs to be remanded for that purpose.

Count III of the complaint is based upon fraud in misrepresenting the value of Wyoming Automotive stock owned by Parsley, which he alleges appellees agreed to purchase at book value on the date of termination of employment. Count IV is based on breach of the alleged contract to

purchase such stock at such value. We find insufficient evidence in the record to establish either of these allegations as a matter of law. The evidence relating to both propositions was in conflict, and the decision of the district court with respect to stock will not be disturbed.

In view of plaintiff-appellant's death on July 8, 1964, it appears proper that our decision should be effective as of July 7, 1964, the day prior thereto, in accordance with the principles established in First Nat. Bank in Creston v. Gorman, 45 Wyo. 519, 21 P.2d 549, 552. Although § 1–29, W.S. 1957, and Rule 25, W.R.C.P., make it apparent the action has not abated and a substitution of party-plaintiff will be necessary, we see no reason why this cannot be accomplished by the trial court.

Reversed and remanded for a substitution of party-plaintiff and for further proceedings consistent with this opinion.