Allan KINNISON, Appellant (Defendant),

v.

Lorena Yorio KINNISON, Appellee (Plaintiff).

No. 5445.

Supreme Court of Wyoming.

May 4, 1981.

John W. Davis of Davis, Donnell, Worrall & Bancroft, P. C., Worland, for appellant.

Kim D. Cannon of Burgess & Davis, Sheridan, for appellee.

Before ROSE, C. J., RAPER, THOMAS and ROONEY, JJ., and TAYLOR, District Judge.

ROSE, Chief Justice.

This appeal has as its genesis the breakup of a nonmarital living arrangement. The district court awarded the plaintiff, Lorena Kinnison, $15,000 by way of enforcing a settlement contract with the defendant, Allan Kinnison. Mr. Kinnison has appealed, claiming that there was no express contract of settlement and, further, that Wyoming law prohibits an award upon the dissolution of a nonmarital relationship.

We will hold that the district court correctly found that there was an enforceable oral contract for the settlement of claims between the parties and will affirm.

THE FACTS

Allan and Lorena Kinnison were married on December 6, 1969. The marriage lasted nearly five years until September 3, 1974, when they were divorced. In the spring of 1975, the parties began living together again in the same house that they had

occupied during their marriage. The couple parented two children; one child was born during the marriage, and the other during the time period when Lorena and Allan Kinnison were living together. In this action the district court awarded child support to the plaintiff for both children. Appellant did not take issue with that award.

From the spring of 1975 until the couple separated in April of 1979, they lived together continuously along with their children. They maintained a joint bank account, pooled their salaries and jointly handled the financial matters of the household.

In June, 1975, soon after the couple had begun living together again, Lorena Kinnison learned of a house and ten acres of land which were for sale and informed the appellant of the availability of this property. Allan Kinnison purchased the property and the couple worked together on improvements to the property during the four years they lived on it together. When the relationship ended in April, 1979, Allan Kinnison told Lorena Kinnison that he wished to sell the property and that he would give her the furnishings and some of the proceeds of the sale. The sum of $15,000 was first suggested by Lorena Kinnison and agreed to by the appellant. There was evidence that the increase in the value of the property during the time the couple lived together amounted to between $48,000 and $62,000. Of that increase, only $22,000 could be attributed to inflation. Accordingly, it would be reasonable to assume that the remaining increase in value could be attributed to the improvements made by the parties.

On June 27, 1979, Lorena Kinnison filed a complaint in district court asking for an accounting and claiming one-half interest in the property acquired during the time they were living together. The plaintiff offered several theories upon which she based her claim, including quantum meruit and unjust enrichment. In the alternative, the plaintiff asked for the payment of $15,000 as the fulfillment of a contract entered into with the defendant to settle her claims against him. The trial took place on October 16, 1980, and resulted in an award to the plaintiff of $15,000. In making the award, the trial judge noted that Ms. Kinnison had claims of $34,000 based on the quantum meruit theory which the judge apparently believed applicable to the case. Nevertheless, the judge stated that the $15,000 award was made to enforce the settlement agreement between the two parties and was not to be regarded as resulting from any of the other theories advanced by the plaintiff.

## THE LAW

Wyoming does not recognize the doctrine of common-law marriage. *In re Roberts' Estate*, 58 Wyo. 438, 133 P.2d 492 (1943); and *In re Reeves' Estate*, 58 Wyo. 432, 133 P.2d 503 (1943). In this state, living arrangements between a man and woman must be formalized by the state before the traditional protections of the marriage relationship can be invoked. While repeatedly rejecting the doctrine of common-law marriage, this court has *never* held, however, that the fact that a man and a woman live together out of wedlock and engage in a sexual relationship in any way invalidates agreements between them or, because of the relationship, renders them incapable of contracting with one another. Only when it is shown that such an agreement has meretricious sexual services as its consideration will the court deny enforcement as being against public policy. *Marvin v. Marvin*, 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106, 113 (1976). There is no allegation here that the agreement to pay Ms. Kinnison $15,000 from the proceeds of the sale of the house was made in exchange for sexual relations. All the evidence indicates that the parties intended the payment to be in settlement of plaintiff's claims in quantum meruit and unjust enrichment arising out of her labors on the house (which resulted in its enhanced value) and in maintaining and managing the household during their unmarried years together. *In Roberts v. Roberts*, 64 Wyo. 433, 196 P.2d 361, reh. denied 64 Wyo. 455, 197 P.2d 697 (1948), we held that a woman who in good

faith believes she had a valid common-law marriage could recover in quasi contract for the value of her services. While the *Roberts* facts are different from those at bar because the Robertses undertook to enter into a formalized commonlaw relationship and these parties did not do that, the *Roberts* holding must nevertheless be read to stand for the proposition that this court has not refused to enforce a contract between unmarried male and female partners living together out of wedlock. *In Willis v. Willis,* 48 Wyo. 403, 49 P.2d 670 (1935), this court refused to find that an implied contract for services rendered automatically arises when a woman lives with a man without marriage. It is to be carefully noted that neither of these cases involve the doctrines of quantum meruit and/or unjust enrichment. We have not heretofore ruled on the viability of such claims nor do we need to do so in order to decide this case.

A contract made in settlement of claims is valid even if the claims settled are of doubtful worth. *Peters Grazing Association v. Legerski,* Wyo., 544 P.2d 449 (1975), reh. denied 546 P.2d 189 (1976); *Parsley v. Wyoming Automotive Company,* Wyo., 395 P.2d 291 (1964). This means that this court will not look behind a settlement agreement to see who would have prevailed in a dispute out of which the settlement agreement arises. If the settlement agreement itself meets contractual requirements, it will be enforced. In the present case, the claims of the plaintiff were not foreclosed by any decision of this court and are supported by the decisions in several states which, like Wyoming, do not recognize a common-law marriage. See *Beal v. Beal,* 282 Or. 115, 577 P.2d 507 (1978); and *Feldman v. Nassi,* 111 Cal.App.3d 881, 169 Cal.Rptr. 9 (1980). The settlement of these claims by and of itself will be sufficient consideration to form a binding contract.

In the instant matter, the district court found that the defendant and the plaintiff had entered into an express oral contract to settle these claims. This agreement was not denied by the defendant. The evidence in the record is sufficient to support this finding and the district court was correct when it ordered the defendant to perform his part of the bargain.

Affirmed.

ROONEY, J., filed a dissenting opinion.

ROONEY, Justice, dissenting.

I cannot agree to uphold the validity of any contract which is contrary to law, morality and public policy. That such should not be upheld has always been established law. *Campbell v. Prater,* 64 Wyo. 293, 191 P.2d 160 (1948); *Takahashi v. Pepper Tank & Contracting Co.,* 58 Wyo. 330, 131 P.2d 339 (1942); *Lingle v. Snyder,* 160 F. 627 (8th Cir. 1908); *Tanno v. Eby,* 78 Ohio App. 21, 68 N.E.2d 813 (1946); *Spurgeon v. McElvain,* 6 Ohio 442 (1834); *Rock v. Ekern,* 162 Wis. 291, 156 N.W. 197 (1916); *Goodrich v. Tenney,* 144 Ill. 422, 33 N.E. 44 (1893).

At the outset, I emphasize that I do not find appellant's position in the situation any better than that of appellee. Another long established equitable principle is that "he who comes into equity must come with clean hands." *Takahashi v. Pepper Tank & Contracting Co.,* supra; *Claus v. Farmers & Stockgrowers State Bank,* 51 Wyo. 45, 63 P.2d 781 (1936). See *Williams v. Weber Mesa Ditch Extension Company, Inc.,* Wyo., 572 P.2d 412 (1977). In this instance, I would find both parties to have contracted contrary to law, morality and public policy, and I would reverse the district court with instructions to dismiss the action and leave the parties in the situation in which they placed themselves.[1]

In stating as follows, the majority opinion recognizes the fact that the relationship between appellant and appellee was illegal, immoral and contrary to public policy:

"Wyoming does not recognize the doctrine of common-law marriage. *In re Roberts' Estate,* 58 Wyo. 438, 133 P.2d

---

1. This matter probably would not have been in court if appellee had demanded that her name be included on the deed to the real property when it was purchased at a time when the relationship of the parties was more pacific.

492 (1943); and *In re Reeves' Estate*, 58 Wyo. 432, 133 P.2d 503 (1943). In this state, living arrangements between a man and woman must be formalized by the state before the traditional protections of the marriage relationship can be invoked. * * *"

The majority opinion then separates one of the aspects of that relationship and treats it in a contrary fashion. It approves that which is normally a property settlement agreement between parties who are dissolving the marriage relationship and which is an integral part of that flowing from the relationship as something foreign thereto and enforceable even without the foundation upon which it rests. And in doing so, it attempts an inconsistent distinction by adding a caveat that it would deny enforcement of such agreement "as being against public policy" if it has "meretricious sexual services as its consideration." It is forced and false reasoning to conclude that part of the consideration for the relationship of the parties and that which flowed therefrom had nothing to do with sex:

> " 'Meretricious' spouse describes a relationship where the parties knew they were cohabitating without marriage. * *"

*Carlson v. Olson*, Minn., 256 N.W.2d 249, n. 2, p. 252 (1977). See *Workmen's Compensation Appeal Board v. Worley*, 23 Pa.Cmwlth. 357, 352 A.2d 240 (1976).

"Meretricious" is defined in 57 C.J.S. at p. 1067, and in Black's Law Dictionary, 5th Ed., at p. 891 as:

> "Of the nature of unlawful sexual connection. The term is descriptive of the relation sustained by persons who contract a marriage that is void by reason of legal incapacity."

The meretricious aspect was present throughout the relationship between appellant and appellee, including the purchase of a house, its upkeep, its improvement, and the birth of a child to them during the period. It flowed into and permeated the breakup of such relationship, including division of property.

The recognition of the special relationship involved in a marriage is well established in case law and legislation. The nature of marriage, qualifications for entering the marriage contract, formalities for becoming married, rights and liabilities resulting therefrom—particularly to preserve the separate property rights of the wife, and the method of dissolution and results thereof—including disposition of property acquired through the efforts of each party and of both parties, are specifically set forth in § 20–1–101, et seq., W.S.1977. The crimes of sexual assault—but with a marital exception, and of prostitution are set forth in §§ 6–4–301, et seq. and 6–5–106, et seq., W.S.1977.

Until now, the marital relationship has received support through law and public policy. No matter how carefully the words are chosen or how great the effort to view this situation in a myopic fashion and thus exclude all other incidents normal to a marriage, the plain fact exists that both parties have assumed a relationship that is recognizable in law, morals and public policy *only* if the legal requirements for such relationship are met. For either of them to ask the courts to disregard this fact but sanction an aspect flowing from such relationship is impertinent. For the court to accede to such request is but another failure by the court to maintain the standards and principles upon which our society and nation were founded and which are essential to their successful continuance.

The majority opinion purports to avoid the obvious and the established law by limiting the transaction to one for a settlement of claims on theories of unjust enrichment or quantum meruit "arising out of her labors on the house (which resulted in its enhanced value) and in maintaining and managing the household during their unmarried years together." But the transaction cannot be so limited. The claims flow from a pseudo-marital relationship and are premised on an implied contract resulting therefrom.

The attempt to support a distinction between this case and established law on the basis that this case is premised on theories of quantum meruit and unjust enrichment

rather than implied contract fails for three reasons.

One, quantum meruit, unjust enrichment contracts implied in law and quasi contracts are synonymous in that they all result from an inference of an obligation or duty without regard to the actual intention of the parties for the purpose of doing justice or equity. An implied-in-fact contract, not here contended for by appellee or appellant, is a true contract in which the agreement is expressed by conduct rather than by words (as is done in an express contract). *United States v. Neidorf*, 522 F.2d 916 (9th Cir. 1975), cert. denied 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976); *Guldberg v. Greenfield*, 259 Iowa 873, 146 N.W.2d 298 (1966); *Thurston v. Cedric Sanders Company*, 80 S.D. 426, 125 N.W.2d 496 (1963); *Hixon v. Allphin*, 76 Idaho 327, 281 P.2d 1042 (1955); *Bill v. Gattavara*, 34 Wash.2d 645, 209 P.2d 457 (1949); *Leonard v. State*, 56 Tex.Cr.R. 307, 120 S.W. 183 (1909); Calamari & Perillo, Law of Contracts (2d Ed.), § 1–12 (1977). Thus, there is no difference between the theory on which this case is based and the basic theories of the cases previously decided contrary to the majority opinion.

Two, the Wyoming cases to which the distinction is directed *were*, in fact, presented on theories of unjust enrichment and quantum meruit. In *Willis v. Willis*, 48 Wyo. 403, 49 P.2d 670 (1935), the court recited plaintiff's argument on page 679 that "she can recover the reasonable value of her services." Such recovery was denied because of the illicit relationship between the parties which relationship was *known to* them. The Roberts case cited by the majority opinion "to stand for the proposition that this court has not refused to enforce a contract between unmarried male and female partners living together out of wedlock" came to this court on four occasions. *In re Roberts' Estate*, 58 Wyo. 438, 133 P.2d 492 (1943) was a case to determine heirship. We there held that common-law marriages were contrary to Wyoming law and public policy and that Barbara Kaiser Roberts could not inherit from Ora P. Roberts as his widow. In *Roberts v. Roberts*, 62 Wyo. 77,

162 P.2d 117 (1945), we held that Barbara Kaiser Roberts' claim against the estate of Ora P. Roberts for wages in three counts (express contract, *quantum meruit*, and money loaned) was timely filed. *In Roberts v. Roberts*, 64 Wyo. 433, 450–451, 196 P.2d 361 (1948), we allowed recovery to Barbara Kaiser Roberts *on her quantum meruit claim* against the estate of Ora P. Roberts inasmuch as *both parties mistakenly believed they were married*. In referring thereto, the court said at page 367:

> " 'There remains for disposition, then, the question as to whether or not the plaintiff is entitled to recover under an implied contract. It appears to be a well settled rule "that a woman who knowingly and voluntarily lives in illicit relations with a man cannot recover on an implied contract for services rendered him during such relationship. Not only does the relationship as, of husband and wife negative that of master and servant, but, such cohabitation, being in violation of principles of morality and chasity [sic], and so against public policy, the law will not imply a promise to pay for services rendered under such circumstances." ' "

> "Respondent contends that since this court determined in the *Roberts'* case cited above that plaintiff and Roberts were not married, their relationship was illicit and therefore the rule in the *Willis* case would prevent recovery upon an implied contract. Other cases cited by respondent are cases where the woman knew the relation to be illicit, the respondent contending that it is only in a case where the man has been guilty of fraud that the woman may recover. It must be recognized that most of the cases found on the subject are either cases where the woman knowingly entered into an illicit affair with the man or was induced by fraud on his part to enter into the relationship. Those cases do not fit the facts in the case at bar because here both parties believed their common law marriage to be valid."

The case last came to us on a petition for rehearing which was denied. *Roberts v.*

*Roberts,* 64 Wyo. 455, 197 P.2d 697 (1948). Quantum meruit was involved in both the *Willis* case and the *Roberts* case. They cannot be distinguished from this case on that basis.

Three, the illegality of the transaction will prevent recovery by either party whether the theory be quantum meruit or otherwise.

> " * * * As a general rule, however, a guilty party to an illegal contract cannot recover in quasi contract for the benefit conferred. [Citation.] That the application of this rule may leave one of the parties unjustly enriched is generally deemed unimportant since the purpose of the rule is not to effect justice between the parties, but to discourage transactions in derogation of the public interest." *Ryan v. Mike-Ron Corp.,* 226 Cal.App.2d 71, 37 Cal.Rptr. 794, 796 (1964).

See *Cole v. Brown-Hurley Hardware Co.,* 139 Iowa 487, 117 N.W. 746 (1908); *Cashin v. Pliter,* 168 Mich. 386, 134 N.W. 482 (1912).

The so-called settlement agreement is not one for settlement of doubtful claims. It is one for settlement of claims which are illegal, immoral and contrary to public policy. Forbearance from doing that which the promisee cannot do legally is no consideration for a promise. *Horvath v. Sheridan-Wyoming Coal Co.,* 58 Wyo. 211, 131 P.2d 315 (1942). In this instance, appellee can point to no consideration which is not a part of the illegal marital relationship. The suggestion that the consideration is forbearance from suing appellant to hold up a real estate sale is suggesting that the consideration is that which appellee has no legal right to do and which cannot be a proper consideration. The suggestion that the consideration was in an oral agreement to acquire and develop real property not only fails because of its affinity to the pseudo-marriage relationship which was illegal, immoral and contrary to public policy, but it also fails as being contrary to § 16–1–101, W.S.1977, the Wyoming Statute of Frauds.

Appellant should not be permitted to use a smoke screen to do indirectly that which the law prohibits her from doing directly.