John S. BEREMAN, Appellant
(Plaintiff),

v.

Loujen BEREMAN, Appellee
(Defendant).

Loujen BEREMAN, Appellant
(Defendant),

v.

John S. BEREMAN, Appellee (Plaintiff).

Nos. 5613, 5613A.

Supreme Court of Wyoming.

May 27, 1982.

William R. Jones and John P. McBride, argued, of Jones, Jones, Vines & Hunkins, Wheatland, for John S. Bereman.

C. Edward Webster, II, Cody, for Loujen Bereman.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

This appeal and cross-appeal arise from a divorce decree entered September 3, 1981. It was the second time that the parties had been divorced from each other. During their first marriage, a daughter was born; however, no issue resulted from the second union. For several years prior to the more recent wedding, the parties cohabitated. Appellant John Bereman raises the following challenges to the divorce decree entered by the district court:

"1. Considering the economic means of both parties, the Trial Court was in error in ordering the Plaintiff-Appellant to pay child support of Five Hundred Dollars ($500.00) per month.

"2. The debtor/creditor relationship of the parties in an amount of Seventy-two Thousand Five Hundred Fifty-three Dollars and Sixty Cents ($72,553.60), including a Thirty Thousand Dollar ($30,000.00) promissory note made prior to the parties' second marriage, loans made during the marriage, and claims for cash investments and expenses should not have been cancelled by the Trial Court.

"3. The Plaintiff-Appellant should not have been ordered by the Trial Court to pay Two Thousand Dollars ($2,000.00) for Defendant-Appellee's attorney's fees, considering the economic means of the Defendant-Appellee."

In her cross-appeal, Loujen Bereman presents these issues:

"1. Did the trial court err in refusing to recognize or accept evidence attempted to be presented by Loujen Bereman in which she claimed an increase in the value of the estate of John S. Bereman during the time the parties lived together and conducted business together from January 1, 1976 until the couple's marriage on December 28, 1980 [1979] under a theory of an express contract, an implied contract, a quasi contract, or under the theory of quantum meruit.

"2. Did the court err in refusing to allow testimony with regard to the increase in value of the 'Ridgway Home' at 802 Lane Drive in Cody during the time the parties cohabited in the home prior to their marriage."

We will affirm.

The parties, both relatively wealthy people,[1] were originally married in 1966 and then resided in Cody, Wyoming. A daughter was born in 1970. In 1973 the parties were divorced. At that time Loujen moved to Hawaii. Custody of the one child was shared by the parties.

Commencing in 1976 the parties resumed living together in Cody. Loujen Bereman testified that during the time prior to the second marriage, the parties had not only recombined their lives but also their assets and business dealings. John Bereman disputed this, claiming that their business affairs were kept separate and that there was no commingling of property. However, he did seek to have the district court order Loujen to pay him $72,553.60—the amount he figured she owed him for loans he made to her prior to their remarriage. Thirty thousand dollars of this sum claimed by John was evidenced by a promissory note dated June 30, 1979.

On December 28, 1979, the parties were married for the second time. The date was partly chosen because it was the birthday of the parties' daughter. But, another consideration was the fact that the tax losses sustained by Loujen during the year helped John substantially reduce his 1979 taxes.

John Bereman testified that the parties separated in July of 1980 when he ceased spending nights at the marital home. Though he was unable to stay away during the day because his office was located there, he only resumed living in the house full time in September when Loujen left. Loujen Bereman disagreed claiming that John continued sleeping in the house until she moved out in September.

In any event, John Bereman filed for divorce on September 17, 1980. In his complaint he alleged that because of irreconcilable differences, he should be granted a divorce. He further asked the court to "make such disposition of and provision for the child of the parties as appears most expedient under the circumstances and most [sic] for the present comfort and future well being of the child" and to "also make such disposition of the property of the parties as appears just and equitable."

The case proceeded to trial on July 23, 1981. At that time, Loujen Bereman attempted to establish that she was entitled to a portion of that increase in value of John Bereman's assets which occurred during the period of time the parties cohabitated prior to their second marriage. She premised her claim upon this court's opinion in *Kinnison v. Kinnison*, Wyo., 627 P.2d 594 (1981). However, the district court ruled that Loujen had failed to establish any kind of agreement between the parties which could have provided a basis for her claim and disallowed any evidence of the increase in value of John Bereman's assets.

Following the trial the district court granted John Bereman a divorce on September 3, 1981. The court order provided that Loujen Bereman would have custody of the parties' daughter subject to John's right to have the child visit for two months

---

1. During the divorce proceedings before us now, Loujen Bereman's wealth was estimated to be somewhere between $470,158 and $640,-158 with an annual income of $12,000 from a trust established by her parents. John Bereman's wealth was estimated at between $766,-540.15 and $1,046,067.18.

each summer. John Bereman was ordered to pay $500 a month child support excepting those months when he himself had custody. Further, the court ordered the cancellation of John Bereman's claims against Loujen Bereman in the amount of $72,553.60 plus interest; this sum included the $30,000 John claimed due him under the June 30, 1979 promissory note. According to its own characterization, this part of the decree was designed to bring about a "just and fair property settlement." And finally, the court ordered John Bereman to pay Loujen Bereman the sum of $2,000 to be used towards the payment of her attorney's fees. From the divorce decree both parties have appealed.

## I

The first issues we shall address are those raised by cross-appellant Loujen Bereman. She contends that the district court erroneously ruled that she was not entitled to a portion of any increase in the value of John Bereman's estate or in the value of the parties' residence which occurred during the time period they cohabitated prior to their second marriage, and further that it should have allowed evidence of the increase in Mr. Bereman's wealth to be admitted. The basis of her claim lies with her testimony at trial. There she asserted that "effective January 1st, 1976, John and I made an agreement to recombine our lives and to recombine our property, management, life, our speculations in real estate life." This testimony was unrefuted. Now, Loujen Bereman argues that, because of this court's holding in Kinnison v. Kinnison, supra, the district court erred in not enforcing the alleged oral agreement. We believe that Ms. Bereman has misconstrued Kinnison.

The opinion in that case, contrary to some news accounts, did not approve or adopt the doctrine of "palimony" in Wyoming. There, both parties admitted that an oral agreement had been reached whereby Allan Kinnison would pay Lorena Kinnison $15,-

000 in order to settle any claims she had against him. This court held that the fact that the couple had been living together did not invalidate their agreement. That narrow holding was reflected in the following statement found in the majority opinion:

"* * * While repeatedly rejecting the doctrine of common-law marriage, this court has never held, however, that the fact that a man and a woman live together out of wedlock and engage in a sexual relationship in any way invalidates agreements between them or, because of the relationship, renders them incapable of contracting with one another. * * *" Kinnison v. Kinnison, supra, 627 P.2d at 595.

Thus, Kinnison stands for the proposition that couples cohabitating can enter into binding contracts. But, that in no way means that purported "agreements" between such couples are exempt from compliance with Wyoming's law of contracts.[2]

In the present case, Loujen Bereman contends that there was an oral agreement with John Bereman to recombine their financial lives. In this regard she testified in direct examination as follows:

"Q. During the time that you were, prior to the actual time you were married did John go about a stock sale of his interest in Engineering Associates?

"A. That was step number one of the particular three-year plan. We had effective September, 1979, [1976] when we got back to living together, that made some very important changes. We planned and discussed the changes we would make after we were married. We were, you know, at that time in counseling. We are both pretty religious people. We were in counseling getting the permission of the Bishop to marry after we had been in this divorce situation. We had elaborate plans about that, with the tax picture being in there too. One of the reasons which otherwise seems strange for this January cutoff date for like my payment of interest on those

---

2. The facts of Kinnison also differ from this case in that there the parties, though they were married and divorced before cohabiting, never remarried.

notes, John simutaneously [sic] ceased paying rent on a piece of property that was in my separate name. Now please understand it, before we were legally married, for tax purposes, we had to keep those separate in terms of the notes. You can't go to the IRS and say hey, I am claiming this as a deduction on this without evidence and during all of the time that we were handling these properties together, before our legal marriage, that's the reason we exchanged notes in each occasion. We had notes on the Maui Kai, we had notes on the Red Buttes, we had assignments in case of death. We had elaborate documentation of these transactions between us as related to properties in our separate names. And I can explain those in great detail because I know every detail."

Section 16–1–101(a)(i), W.S.1977, Wyoming's version of the Statute of Frauds, provides:

"(a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith:

"(i) Every agreement that by its terms is not to be performed within one (1) year from the making thereof;"

If a contract cannot by its terms be performed within one year, it must comply with the writing requirement found within the statute. *Massion v. Mt. Sinai*, 40 Wyo. 297, 276 P. 930 (1929). Since according to Loujen Bereman's own testimony the agreement was a three-year plan, that agreement clearly comes within the Statute of Frauds and is deemed void unless it is evidenced in writing.

■ Various writings, some signed by John Bereman, were admitted into the evidence as exhibits. Though "the Statute of Frauds does not require that the complete agreement between the parties show on the face of the signed writing, the nature and extent of the undertaking * * * must so appear or the agreement is not enforceable." *American Industrial Corporation v. First & Merchants National Bank*, 216 Va.

396, 219 S.E.2d 673, 676 (1975). The relationship and connection between separate writings must appear on their face in order for them to be considered together as evidence of an oral agreement. *Young v. McQuerrey*, 54 Hawaii 433, 508 P.2d 1051 (1973). The exhibits present in this case do not show an interrelationship on their face. In fact, they appear as completely separate and independent documents. The only indication that there exists any connection between them comes from Ms. Bereman's testimony. Accordingly, they cannot be used to satisfy the writing requirement of § 16–1–101(a)(i), supra.

■ We acknowledge that a party must manifest an objection to avail him/herself of the protection afforded by the Statute of Frauds or else it is waived. *Jim's Water Service, Inc. v. Alinen*, Wyo., 608 P.2d 667 (1980); *Davison v. Nicholson*, 37 Wyo. 412, 263 P. 605 (1928). The record reflects that John Bereman's attorney did object to Loujen Bereman's testimony because, among other reasons, it violated § 16–1–101, supra. The court at that point reserved ruling upon the objection, but then later sustained it.

■ We agree with the trial court's action. The agreement, referred to as the three-year plan by Ms. Bereman is void under the Statute of Frauds since there are insufficient writings memorializing it.

■ Ms. Bereman argues that "[e]ven if the court was correct in refusing to find an express contract, the court should have allowed in the evidence on the basis of an implied contract or quasi contract." The implied contract or quasi contract doctrines of quantum meruit and unjust enrichment are equitable doctrines. *Rocky Mountain Turbines, Inc. v. 660 Syndicate, Inc.*, Wyo., 623 P.2d 758 (1981).

"The common thread which draws these actions together is that 'one person is accountable to another on the ground that otherwise he would unjustly benefit or the other would unjustly suffer loss.' At the core of the law of restitution is the principle that 'A person who has been

unjustly enriched at the expense of another is required to make restitution to the other. * * * ' " (Footnotes omitted.) Calamari & Perillo, Law of Contracts (2nd Ed. 1977), § 15–2, p. 571.

"The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly." (Footnotes omitted.) 66 Am.Jur.2d Restitution and Implied Contracts § 3, p. 945.

 For a party to successfully assert a quasi contract claim, the showing of an enrichment will not in and of itself be sufficient. In order to invoke the remedial powers of a court of equity, the underlying circumstances, as between the two parties, must be such that the enrichment is unjust. *Rocky Mountain Turbines, Inc. v. 660 Syndicate, Inc.*, supra; *McGrath v. Hilding*, 41 N.Y.2d 625, 394 N.Y.S.2d 603, 363 N.E.2d 328 (1977).

 In the present case, Loujen Bereman attempted to argue that she was entitled to a portion of the increase in value of John Bereman's property for the business advice she gave him. She claimed that even if there was no enforceable contract, the doctrine of quantum meruit or unjust enrichment supported her claim. However, the trial court correctly ruled against Ms. Bereman. There was no evidence that Ms. Bereman was not compensated for any services she may have provided. In fact, quite the contrary appears to have been true. John Bereman not only loaned Ms. Bereman

money,[3] but also, according to Ms. Bereman's testimony, was actively involved in her financial affairs, presumably bringing along his own considerable expertise. There was no showing that whatever enrichment Mr. Bereman received was unjust. Accordingly, the trial court correctly barred any evidence pertaining to the amount of that enrichment.

## II

Now, turning to John Bereman's allegations of error, first he contends that in light of the economic means of both parties, the trial court erred in ordering Mr. Bereman to pay $500 a month in child support.

 In child custody and support proceedings, the paramount concern of the court is the child's welfare. *Mentock v. Mentock*, Wyo., 638 P.2d 156 (1981). The objective for the trial court is to find a reasonable balance of the rights and affection of each of the parents, in light of the child's needs. *Leitner v. Lonabaugh*, Wyo., 402 P.2d 713 (1965). When reviewing a district court's determination in these matters, unless there is a procedural error, we may only reverse the district court's finding if there was an abuse of discretion. *Grosz v. Grosz*, Wyo., 506 P.2d 46 (1973).

 In the present case, there was evidence of the parties' considerable wealth and income. It was also established that the parties' child had suffered severe health problems. Loujen Bereman testified as follows:

"A. Well her physical condition is pretty poor which relates to some old illnesses that she had. She had tuberculosis as a young child which she did not get in Hawaii, she contracted that disease in Cody, Wyoming. And she has an eye injury which later caused surgery for both of her crossed eyes and she has amblyopia so she has lots of eye problems. The tuberculosis left her with a susceptibility to every passing flu bug, and particularly in the last year she has also developed a duodenal ulcer."

3. It should not be forgotten that these loans were cancelled by the district court.

Ms. Bereman indicated that if she got custody of her daughter, she would return with her to Hawaii and continue to have her attend a private school. She estimated the cost of raising her daughter there would exceed $1,000 a month.

Based upon the evidence we cannot conclude that the trial court abused its discretion in ordering John Bereman to pay $500 a month child support. This is particularly true in light of the fact that custody of the child had been given to the mother who had stated that she planned to rear her daughter in Hawaii.

■ Mr. Bereman's next challenge to the district court's order concerns the cancellation of the debts that Loujen Bereman owed to her husband. In particular, Mr. Bereman focuses upon the cancellation of the $30,000 promissory note. In connection therewith he claims that "[i]n the absence of proof of [an agreement between the parties cancelling the debt], the promissory note is valid and cannot be cancelled and invalidated. *Kinnison v. Kinnison*, 627 P.2d 594 (Wyo.1981)."

Mr. Bereman's argument misses the essence of the district court's action. When he instituted the divorce proceedings, Mr. Bereman specifically asked the court to "make such disposition of the property of the parties as appears just and equitable." The court in cancelling the $30,000 note did so in order to accomplish "a just and fair property settlement." The trial court did not cancel the debt on the basis that Mr. Bereman asserts. In the divorce decree no mention was made of the evidence Ms. Bereman had presented while attempting to show that the debt had been forgiven. There is simply nothing in the record to indicate that the court based its decision on Ms. Bereman's claim. The court's action was a division of the property.

This court has previously spoken at length about our role in reviewing property divisions which result from divorce proceedings. It concluded its discussion with the observation that:

"* * * As an appellate court, we consider that our power to disturb a property settlement fixed by a trial judge is limited indeed. There must be a clear abuse of discretion before we will upset or adjust such a settlement. We consider 'abuse of discretion,' to be such abuse as shocks the conscience of the court. It must appear so unfair and inequitable that reasonable persons could not abide it." *Paul v. Paul*, Wyo., 616 P.2d 707, 714 (1980).

In this case, it appears that the court cancelled debts in excess of $72,000, in effect awarding Loujen Bereman that sum. This may seem somewhat extreme for such a brief marriage; however, a closer examination of the proceedings reveals that the court's action was indeed quite reasonable. The existence of the debt was disputed. Mr. Bereman in his brief on appeal seemingly concedes that his proof of part of the debt was tenuous:

"Although we do not agree with the Trial Court's decision to cancel this approximate Forty-two Thousand Dollar indebtedness, we nevertheless understand that the Court could, in the exercise of its discretion, arrive at such a conclusion from an equitable standpoint. * * *"

Ms. Bereman also challenged the $30,000 note's enforceability claiming it had been forgiven. But more than that she had claims of her own. For example, she contended that she was supposed to have received some of the monies saved by Mr. Bereman as a result of the joint tax return they were able to file in 1979. The tax savings resulted because of the substantial losses she had incurred in 1979. She also testified that she stopped charging Mr. Bereman rent on some of Ms. Bereman's property he was using.

Clearly, the district court had before it two bickering parties. Their on-again, off-again relationship presented it with a knotty situation. It did the best it could in unraveling their claims. We will not second guess it on appeal. We cannot con-

clude that its division of the property was an abuse of discretion.

The final issue we have before us was raised by Mr. Bereman. He argues that he should not have been forced to contribute $2,000 towards the payment of Ms. Bereman's attorney's fees.

■ The question of who pays the attorneys' fees in a divorce action is a part of the property division and thus is within the discretion of the trial court. *Paul v. Paul,* supra. Accordingly, we may only consider the question where it is shown on appeal that the trial court abused its discretion.

■ Here, there was evidence that Loujen Bereman's attorney's fees would exceed $5,000. In light of Mr. Bereman's relative financial well-being we cannot conclude that it was an abuse of discretion to require him to pay $2,000 of the fees.

Affirmed.

ROSE, Chief Justice, specially concurring.

I would have believed that the court could not set aside the contract (i.e., cancel the debt) for $30,000 which, to me, is an agreement to pay and receive money according to certain terms entered into between two persons competent and able to contract with one another. While the appellant argues that the court cannot do this, he presents no authority to that effect and I have found none. I suppose that it can be said that the court did nothing more in cancelling the debt than it would have done if it had let the debt stand and then ordered the husband to pay $30,000 to the wife as a part of the property settlement. Nobody would have questioned the court's ability to do this.

For these reasons, I will concur.

ROONEY, Justice, specially concurring.

I concur in the result reached by the majority opinion. I agree with the reasoning in the majority opinion with reference to the issue relative to payment of $500.00 per month child support by John (appellant in case No. 5613 and appellee in case No. 5613A), and relative to the payment of $2,000.00 attorney fees by John. I agree that the trial court did not abuse its discretion in either instance.

The other issues[1] related to alleged occurrences, contractual and otherwise, which concerned the relationship between the parties during the time they cohabited without marriage. In my dissent to *Kinnison v. Kinnison,* Wyo., 627 P.2d 594, 597 (1981), I set forth in detail my reasons (1) for not recognizing the validity of contracts or other occurrences which are contrary to law, morality and public policy, and (2) for considering palimony-type claims resulting from cohabitation without marriage to fall within such categories. Therefore, I will not again detail the reasons here. These other issues arise from cohabitation without marriage; and for the reasons stated in my dissent in *Kinnison,* the court should not assist either party with reference to these other issues. The parties should be left in the situation in which they placed themselves. In effect, the trial court did so.

Upon this basis, I would affirm.

---

1. Whether or not the trial court erred: (1) in refusing to receive evidence, under contract theories, relative to increase in value of John's estate during the time the parties cohabited without marriage; (2) in refusing to receive evidence relative to increase in value of a Cody residence during the time the parties cohabited without marriage; and (3) in cancelling a debt of approximately $72,000.00 owed by Loujen (appellant in case No. 5613A and appellee in case No. 5613) to John (including a $30,000.00 promissory note), which was incurred during the time the parties cohabited without marriage.